562          APPELLATE COURTS OF ILLINOIS.

Manufacturers Mercantile Co. v. M. R. Co., 169 Ill. App. 562.

# Manufacturers Mercantile Company, Appellee, v. Mon= arch Refrigerating Company, Appellant.

## Gen. No. 15,650.

1. TROVER—*what essential to maintain action.* In order to maintain an action of trover the plaintiff has the burden to prove three things: first, its title to the property in question; second, its right to the immediate possession thereof, and, third, the wrongful withholding of such possession.

2. TROVER—*what essential to maintenance against warehousemen.* In order successfully to maintain trover against a warehouseman a tender to such warehouseman of his proper and legitimate charges or else a payment thereof must be shown.

3. WAREHOUSEMEN—*what defense to action of trover against.* If the property stored has been taken from the possession of the warehouseman pursuant to a writ duly issued in an attachment suit in which the warehouseman was joined as garnishee such warehouseman cannot be held liable for a conversion at the instance of the owner or of one who has loaned money upon the faith of the warehouse receipts, if such warehouseman as garnishee has set up by answer all the facts in its possession.

4. WAREHOUSEMEN—*nature of warehouse receipts.* Warehouse receipts are not negotiable in a legal sense so as to enable the person holding them to transfer a greater right or title to the property mentioned in them than he himself had.

5. WAREHOUSEMEN—*what essential to protect assignee of receipts.* If the assignee of warehouse receipts would protect himself as against the world he must give prompt notice of the assignment thereof to him and failure to do so, though it does not destroy his right, exposes him to the danger of assignment to another or to the rights of an attaching creditor of the assignor.

Trover. Appeal from the Municipal Court of Chicago; the HON. JOHN W. HOUSTON, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Reversed and remanded. Opinion filed April 19, 1912, on rehearing.

GENTZEL & CRANE and MENCHA & GUGGEMEIR, for appellant.

WEST, ECKHART & TAYLOR, for appellee.

MR. JUSTICE F. A. SMITH delivered the opinion of the court.

From about the 19th day of August, 1907, to October 2, 1907, Fred C. Lamont, representing the Lamont Desiccated Egg Company, placed at different times in the warehouse of the defendant, Monarch Refrigerating Company, appellant, for the purpose of storage, 46 packages or drums of what are known as desiccated eggs. For the 46 packages or drums of desiccated eggs, the defendant Monarch Refrigerating Company issued ten warehouse receipts acknowledging the receipt of the goods specified from the Lamont Desiccated Egg Company. The receipts show that the first of the eggs were placed in the warehouse on the 19th day of August, 1907, and the last eggs on October 2, 1907.

The plaintiff below, Manufacturers Mercantile Company, appellee, purchased the warehouse receipts from Lamont about the time of their respective dates.

On October 23, 1907, an attachment suit was brought in the Municipal Court of Chicago by one M. Shier against Fred C. Lamont, doing business as the Lamont Desiccated Egg Company. In that suit the defendant Monarch Refrigerating Company, appellant here, was made a party as garnishee. Personal service was had on Lamont, and a default judgment was rendered against him for the sum of $911.80. The appellant, garnishee in the attachment suit, filed its answer in that suit under oath by one of its officers, setting up that it had in its possession 46 packages of eggs placed there by Fred C. Lamont at various times since August 16, 1907, in the name of the Lamont Desiccated Egg Company, and the warehouse receipts were issued to the Lamont Desiccated Egg Company, which warehouse receipts for the goods the defendant upon information and belief stated had been placed in the hands of parties unknown to said Monarch Refrig-

564    APPELLATE COURTS OF ILLINOIS.

Manufacturers Mercantile Co. v. M. R. Co., 169 Ill. App. 562.

erating Company as a pledge for money loaned, and that said Monarch Refrigerating Company has a lien on the goods for warehouse charges amounting to $22.17.

On the trial of that suit on December 3, 1907, a judgment was entered against the Monarch Refrigerating Company, garnishee, appellant here, for 46 packages of eggs subject to the lien of appellant of $22.17 on appellant's answers, and thereupon the court ordered a special execution and order of sale.

December 5, 1907, a special execution was issued out of the Municipal Court under and by virtue of which the officer of the Court on the 16th day of December, 1907, took the 46 packages of desiccated eggs from the possession of the Monarch Refrigerating Company and delivered them to M. Shier, plaintiff in the attachment suit, on the plaintiff's execution.

In March, 1908, Mr. Killmore, one of the officers of appellee, spoke to Frederick Espert, secretary and treasurer of the Monarch Refrigerating Company, and asked for samples of the desiccated eggs from each of the packages or drums represented by the warehouse receipts. Mr. Espert thereupon stated that the goods were not there; that they had been taken from the defendant company by an officer of the Municipal Court under and by virtue of a writ. Thereupon this action in trover was brought by the Manufacturers Mercantile Company against the Monarch Refrigerating Company for the desiccated eggs in question, the plaintiff claiming that the defendant had converted the 46 packages of desiccated eggs to its own use while they were stored with appellant, a public warehouseman.

In addition to the above facts proof was made that the market value of the desiccated eggs was from 40 to 50 cents per pound, according to the terms of delivery.

At the close of the plaintiff's case the defendant

moved the court to direct a verdict for the defendant on the ground that the plaintiff had failed to prove a demand and had showed no title to the goods or the warehouse receipts, and that no act of conversion on the part of the defendant was shown by any evidence offered on behalf of the plaintiff. Thereupon the plaintiff, by permission of the court, introduced evidence of the assignments of the warehouse receipts. No notice of the assignments was ever given, according to the proof, to the Monarch Refrigerating Company or its officers, who never saw the assignments on the back of the warehouse receipts until the day of the trial.

The defendant introduced and read in evidence the affidavit of attachment, the attachment writ, the answer, and amended answer of the Monarch Refrigerating Company, as garnishee, and all orders and the judgment in the case of Shier v. Lamont, showing a trial and finding of the Municipal Court under whose orders and directions the goods were taken from the Monarch Refrigerating Company, appellant here, and that the goods were taken out of the warehouse of the appellant by an officer of the Municipal Court under and by virtue of a certain writ, which the officer presented at the time.

At the close of the evidence the plaintiff moved the court to strike out all the testimony, oral or documentary, introduced by the defendant in reference to what occurred in the case of Shier v. Lamont, which motion was sustained by the court and the evidence was stricken out. The court then refused to permit counsel for appellant to address the jury on the question of liability, and also refused to instruct the jury on the various questions as requested by the defendant, appellant, and peremptorily directed the jury to find the issues joined in favor of the plaintiff and assess the plaintiff's damages at such sum as they might believe the goods

566   Appellate Courts of Illinois.

Manufacturers Mercantile Co. v. M. R. Co., 169 Ill. App. 562.

were worth in the market on December 16, 1907. Following the court's directions the jury returned a verdict finding the issues for the plaintiff and assessing plaintiff's damages at the sum of $1,636.12.

After overruling the defendant's motion for a new trial the court entered judgment against the defendant for the amount of the verdict and costs. This appeal is prosecuted from that judgment.

In order to maintain this action in trover against appellant, appellee had the burden of proving affirmatively three things: First, its title to the property in question; second, its right to the immediate possession thereof, and third, the wrongful withholding of said possession or conversion by the appellant. The failure to prove any one of these three substantive facts by the plaintiff would be fatal to its right to recover.

Assuming that the transfer to the plaintiff below of the warehouse receipts was sufficient proof of title in the plaintiff we think the evidence fails to show that the plaintiff had the right of immediate possession, for there is no proof in the record that the defendant's legitimate and proper warehouse charges were either tendered or paid to the defendant by the plaintiff. We think also that the evidence fails to show that the defendant, appellant, wrongfully withheld possession of the property from the plaintiff or did any act which amounted in law to a conversion of the plaintiff's property.

The court erred in excluding the evidence from the jury of what took place in the case of Shier v. Lamont. That evidence, in our opinion, was competent and tended to show that the property was taken under legal proceedings from the appellant by an officer of the Municipal Court. When appellant set up in its answer in that proceeding the facts and all the facts of which it had any knowledge it had done all that the law re-

quired of it, and all that it could do in reason in the safekeeping and storage and care of the property, and tended to prove that the appellant was not guilty of any act of dominion actual or constructive over the property which was in any wise inconsistent with or in exclusion of the rights of appellee, and that the appellant had not converted the property in question to its own use.

The plaintiff had not informed the defendant of its ownership of the property by the purchase of the warehouse receipts and the assignment thereof to the plaintiff, and hence the appellant was unable to disclose in its answer the real owner of the property in question which had been placed in its warehouse. The evidence so excluded by the court under the plea of not guilty was entirely competent and proper as tending to show an excuse for failing to redeliver the property to the plaintiff upon its surrender of the warehouse receipts held by it. The defendant had no notice or knowledge, according to the proof, of any title or claim of the plaintiff to the property in question. Warehouse receipts are not negotiable in a legal sense so as to enable the person holding them to transfer a greater right or title to the property mentioned in them than he himself had. Their only office is to stand in the place of the property itself so far as the questions involved in this case are concerned for the convenience of the parties interested in the property. The transfer of warehouse receipts did not operate in legal effect in the same manner and to the same extent as the transfer of negotiable paper, and if warehouse receipts are to be made negotiable in the sense that negotiable instruments are transferable it is for the Legislature to make the rule and not for the court. Burton v. Curyea, 40 Ill. 320. Our statute with reference to the transfer of warehouse receipts for property in nowise makes warehouse receipts negotiable,

568   APPELLATE COURTS OF ILLINOIS.

Manufacturers Mercantile Co. v. M. R. Co., 169 Ill. App. 562.

but simply makes them assignable by endorsement and therefore subject to all the defenses which may be asserted against the assignor unless notice of such assignment is given to the warehouseman or bailee. Canadian Bank v. McCrea, 106 Ill. 281; Shaw v. Railroad Company, 101 U. S. 557.

If the assignee of the warehouse receipts, such as those shown in evidence in this case, would protect himself as against the world he must give prompt notice of the assignment thereof to him, and failure to do so, though it does not destroy his right, exposes him to the danger of being overreached by subsequent assignment to another or to the rights of an attaching creditor of the assignor. As said in Morris v. Cheney, 51 Ill. 451, "It is no doubt true that such an assignee, in order to prove his title against the debtor, must give immediate and prompt notice of assignment to him, still if he does not give such notice it does not destroy his right, but exposes it to be overreached by subsequent assignment to another."

Appellant having never been notified of appellee's claim of title to the property was summoned as garnishee in the Municipal Court, and required to make answer under oath in regard to the property in question, and this it did faithfully and clearly, and having answered and shown all the facts within its knowledge in regard to the ownership of the property it discharged its full duty with reference thereto, and its action in so doing cannot be regarded as tending to prove a conversion of the property. The taking of the property under the writ of attachment was a full justification, and a good legal excuse for its failure to deliver the property taken from it by legal proceeding to the owner of the warehouse receipts, who had failed to notify it of its title to the property. If it had known and had been able to answer that the plaintiff was the real owner of the property at the time

of the service of the garnishment writ, it could have
set up such fact, and could have notified plaintiff of
the proceedings in the Municipal Court whereby it
was sought to subject the property to the payment of
the debt of Lamont. This would have been a complete
answer to the process of garnishment, and must have
resulted legally in a judgment in favor of the gar-
nishee. Hurd's Revised Statutes, chap. 62, sec. 16;
Sandburg v. Papineau, 81 Ill. 446; Story on Bailments,
Sec. 442.

In our opinion the court erred in excluding the evi-
dence of the witness Espert, secretary and treasurer
of appellant, as to whether or not any notice was ever
given to appellant by plaintiff of its ownership of the
property in question. We think the evidence was ma-
terial and competent.

We think the trial court for the reasons stated erred
in directing a verdict, for there were questions of fact
in the case which should have been passed upon by the
jury.

For the errors indicated the judgment is reversed
and the cause is remanded for a new trial.

*Reversed and remanded.*

**Per Curiam.** This cause was not tried in the Court
below with any reference to the Act of 1907, entitled
an Act in regard to warehouse receipts, and nothing
was said in the briefs and arguments in regard to
that act or its provisions, although the receipts in
question were issued shortly after the act went into
effect. On the petition for a rehearing in this court it
is urged for the first time that the receipts are nego-
tiable under that act. In our opinion the receipts in
question do not contain all the necessary elements
which that act provided warehouse receipts must em-
body in order to make them negotiable. They are

therefore not negotiable under the terms and pro-
visions of the act.

*Reversed and remanded.*