THE MANUFACTURERS' MERCANTILE COMPANY, Appellant, *vs.* THE MONARCH REFRIGERATING COMPANY, Appellee.

*Opinion filed February 17, 1915.*

1. WAREHOUSES—*what equivalent to statement that goods will be delivered to depositor or his order.* A statement in a warehouse receipt that the goods are subject to the order of the depositor upon payment of all charges and the surrender of the certificate, properly endorsed, is equivalent to a statement that the goods will be delivered to the depositor or to his order.

2. SAME—*when warehouse receipt sufficiently states the location of the warehouse.* The heading on a warehouse receipt reading, "Monarch Refrigerating Company, Michigan, Rush, Cass & Kinzie Streets," followed by a date line reading, "Chicago, Oct. 2, 1907," sufficiently states the location of the warehouse.

3. SAME—*failure to state rate of storage charges does not render a warehouse receipt non-negotiable.* Failure of a warehouse receipt to state the rate of storage charges does not render the receipt non-negotiable, as warehouse receipts do not necessarily lose their negotiability because they fail to state all the terms required by section 2 of the Warehouse Receipts act of 1907.

4. SAME—*section 2 of Warehouse Receipts act was intended to protect holders and purchasers.* The requirements of section 2 of the Warehouse Receipts act were imposed for the benefit of the holders of the receipts and purchasers from them, and it was not

intended that a failure to observe such requirements would render the receipts non-negotiable or void in the hands of the holder.

5. SAME—*distinction between negotiable and non-negotiable receipts.* Under sections 4 and 5 of the Warehouse Receipts act of 1907 a receipt which states that the goods will be delivered to the depositor or another specified person is non-negotiable, while a receipt which states that they will be delivered to the bearer or to the order of the person named in the receipt is negotiable.

6. SAME—*when the warehouseman is liable as for conversion of the goods.* Under section 41 of the Warehouse Receipts act a purchaser of a negotiable receipt acquires title to the goods, and under sections 10 and 11 of such act the warehouseman, by surrendering them to another person without taking up and canceling the receipt, becomes liable to the purchaser as for the conversion of the goods.

7. SAME—*when goods in warehouse are not subject to attachment.* Under section 25 of the Warehouse Receipts act, goods for which a negotiable receipt has been issued cannot, while in the possession of the warehouseman, be attached by garnishment or otherwise, or be levied upon under an execution, unless the receipt be first surrendered to the warehouseman or its negotiation be enjoined, and the warehouseman cannot be compelled to deliver up the actual possession until the receipt is surrendered to him or impounded by the court.

8. SAME—*a warehouseman must see that no judgment is rendered against him as garnishee.* Where a warehouseman, after issuing a negotiable receipt, is summoned as garnishee in an attachment suit against the depositor to which a purchaser of the receipt is not a party, it is his duty to see that no judgment is rendered against him, and if judgment is erroneously entered against him he must secure a reversal of it in order to protect himself, as he cannot rely upon the attachment judgment, and the execution issued thereon, as a defense to an action of trover brought by the purchaser of the receipt.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Municipal Court of Chicago; the Hon. EDWARD A. DICKER, Judge, presiding.

WEST & ECKHART, for appellant.

MANCHA BRUGGEMEYER, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

The appellant recovered a judgment in trover against the appellee for $1636.12, which the Appellate Court reversed. (169 Ill. App. 562.) The cause was remanded, and upon a second trial the jury, under the instruction of the court, returned a verdict finding the appellee not guilty. The judgment entered on the verdict was affirmed by the Appellate Court, which granted a certificate of importance and an appeal to this court.

In 1907 the appellee, the Monarch Refrigerating Company, was conducting a public warehouse in the city of Chicago, and between August 19 and October 2 the Lamont Desiccated Egg Company placed in this warehouse forty-six packages or drums of desiccated eggs weighing 4867 pounds, for which ten warehouse receipts were issued by the appellee, which were subsequently purchased by and assigned to the appellant. On October 23, 1907, M. Shier began an attachment suit in the municipal court of Chicago against the Lamont Desiccated Egg Company. There was personal service of summons and judgment was rendered against the defendant by default for $911.80. The appellee, having been summoned as a garnishee, filed an answer setting up the storage of the goods, the issue of negotiable warehouse receipts for them, and the fact that the appellee had been informed and believed that the said warehouse receipts had been placed in the hands of parties unknown to the appellee as a pledge for money borrowed, and that the appellee had a lien on the goods for $22.07, warehouse charges. Judgment was rendered against the appellee on this answer for forty-six packages of eggs, subject to the warehouse charges, and a special execution having been issued for their sale, the appellee delivered them to the officer having the execution, they were sold and the proceeds applied toward the satisfaction of the execution. Afterward the appellant demanded the

goods, and upon learning that they had been taken under the execution, began an action for their conversion.

The receipts issued by the appellee were in the following form, differing only as to the date, amount and number of the receipt:

| Lot | Wh. | Sec. | Articles |
|-----|-----|------|----------|
| 8044 | D | ... | 1 Lg. Drum Des. Eggs |
| 3045 | " | ... | 1 Sm. Drum Des. Eggs |
| 3046 | " | ... | 1 Sm. Drum Des. Eggs |
| | | 3 drums | |

"Series D.                    No. 1447.

Monarch Refrigerating Company,

Michigan, Rush, Cass & Kinzie Streets.

.CHICAGO, *Oct. 2, 1907.*

Received for storage from Lamont Desiccated Egg Co. three (3) drums desiccated eggs subject to their order hereon on payment of all charges and the surrender of this receipt properly endorsed.

This company will provide any desired temperature but will not be responsible for results, to be removed by owner on request.

It is agreed that all loss or damage to property occasioned by fire, water, leakage, vermin, ratage, breakage, frost, accidental or providential causes, riot or insurrection, or to perishable property, is at owner's risk. Loose fish, loose meats and any class of goods not properly packed at owner's risk. Not responsible for shrinkage in weights. Warehouse receipts must accompany delivery orders.

Storage per contract...........................

Net weight handed in, 390.

MONARCH REFRIGERATING Co.,

F. Espert, *Sec'y & Treas.*

*President.*"

Indorsement: "Lamont Desiccated Egg Co.—By Fred C. Lamont."

The General Assembly passed an act which went into effect on July 1, 1907, known as the Uniform Warehouse Receipts act, (Hurd's Stat. 1913, p. 1986,) and the rights of the parties are governed by that act.

The appellant's claim is that the receipts given by the appellee were negotiable warehouse receipts, the indorsement of which passed to the appellant the title to the goods and the right to their possession; that the goods were not subject to garnishment, and that by the surrender of the

goods without taking up and canceling the receipts the appellee became liable to the appellant for their value. The appellee contends that the receipts were not negotiable, and that the judgment against it as garnishee in the attachment suit protects it from liability.

The appellee, being lawfully engaged in the business of storing goods for profit, was a warehouseman, and was authorized by section 1 of the above act to issue warehouse receipts. Sections 2, 4, 5 and 7 are as follows:

"Sec. 2. Warehouse receipts need not be in any particular form, but every such receipt must embody within its written or printed terms:

"(*a*) The location of the warehouse where the goods are stored.

"(*b*) The date of issue of the receipt.

"(*c*) The consecutive number of the receipt.

"(*d*) A statement whether the goods received will be delivered to the bearer, to a specified person, or to a specified person or his order.

"(*e*) The rate of storage charges.

"(*f*) A description of the goods or of the packages containing them.

"(*g*) The signature of the warehouseman, which may be made by his authorized agent.

"(*h*) If the receipt is issued for goods of which the warehouseman is owner, either solely or jointly or in common with others, the fact of such ownership; and

"(*i*) A statement of the amount of advances made and of liabilities incurred for which the warehouseman claims a lien. If the precise amount of such advances made or of such liabilities incurred is, at the time of the issue of the receipt, unknown to the warehouseman or to his agent who issues it, a statement of the fact that advances have been made or liabilities incurred and the purpose thereof is sufficient.

"A warehouseman shall be liable to any person injured thereby, for all damage caused by the omission from a negotiable receipt of the terms herein required.

"Sec. 4. A receipt in which it is stated that the goods received will be delivered to the depositor, or to any other specified person, is a non-negotiable receipt.

"Sec. 5. A receipt in which it is stated that the goods received will be delivered to the bearer, or to the order of any person named in such receipt is a negotiable receipt. No provision shall be inserted in a negotiable receipt that it is non-negotiable. Such provision, if inserted, shall be void.

"Sec. 7. A non-negotiable receipt shall have plainly placed upon its face by the warehouseman issuing it 'non-negotiable,' or 'not negotiable.' In case of the warehouseman's failure so to. do, a holder of the receipt who purchased it for value supposing it to be negotiable, may, at his option, treat such receipt as imposing upon the warehouseman the same liabilities he would have incurred had the receipt been negotiable. This section shall not apply, however, to letters, memoranda, or written acknowledgments of an informal character."

The appellee's contention is that the omission from the receipt of any of the terms mentioned in section 2, renders the receipt non-negotiable, and that the receipts in question do not state the location of the warehouse, the rate of storage charge, or whether the goods will be delivered to the bearer, to a specified person or to a specified person or to his order. The receipts do state that the goods were received from the Lamont Desiccated Egg Company and were subject to its order on payment of all charges and the surrender of the receipts, properly indorsed. Section 38 of the act provides that negotiable receipts may be negotiated by indorsement in blank to bearer or to a, specified person. The statement that the goods were subject to the order of the depositor on payment of all charges

and the surrender of the certificate, properly indorsed, was equivalent to a statement that they would be delivered to the depositor or to his order. The location given,—Michigan, Rush, Cass and Kinzie streets, in Chicago,—was suf-. ficiently definite. The receipts did not state the rate of storage charges, but warehouse receipts do not lose their negotiability because they fail to state all the terms that are required by section 2 of the Warehouse Receipts act. Warehouse receipts existed before that act, and were of themselves but written evidence of a contract between the depositor and the warehouseman. A warehouse receipt was an acknowledgment by the warehouseman that he had received, and held in store for the depositor, goods of the kind and amount named in the receipt, and from this acknowledgment the law imposed certain duties upon the warehouseman. (*Canadian Bank* v. *McCrea,* 106 Ill. 281.) No particular form was necessary at common law for such a receipt and none is necessary under the statute. It was held in *Hoffman* v. *Schoyer,* 143 Ill. 598, that the failure of warehouse receipts to state, on their face, the brands and distinguishing marks required by section 24 of the act of April 25, 1871, did not render them void.

The requirements of section 2 were imposed for the benefit of the holder of the receipt and of the purchasers from him. It was not intended that a failure to observe them should render the receipt void in the hands of the holder. The appellee contends that such failure had the effect to render the receipts non-negotiable. Section 2 does not deal with the negotiability of warehouse receipts. After providing that no particular form shall be necessary for warehouse receipts, it prescribed certain terms to be embodied in them for the protection of the depositor or his assigns, and that it was for the protection of such persons that these terms were required is indicated by the provision that their omission from a negotiable receipt should render the warehouseman liable for all damages to

any person injured thereby. This provision is inconsistent with the claim that the omission renders the receipt non-negotiable, for it refers expressly to the omission from a negotiable receipt and not from a receipt which would otherwise be negotiable. The distinction between negotiable and non-negotiable receipts is stated in sections 4 and 5. A receipt which states that the goods will be delivered to the depositor, or another specified person is non-negotiable; one which states that they will be delivered to the bearer or to the order of a person named in the receipt is negotiable. These receipts came within the definition of the last class and were negotiable.

Under section 41 of the act in question the appellant, by the purchase of the warehouse receipts, acquired the title to the goods, and under sections 10 and 11 the appellee became liable to appellant as for their conversion by delivering the goods to another person without taking up and canceling the warehouse receipts. By surrendering possession of the goods appellee had lost its lien under the provisions of section 29, and the judgment in the attachment suit was no defense, because under section 25 goods for which a negotiable receipt has been issued can not, while in the possession of the warehouseman, be attached by garnishment or otherwise, or be levied upon under an execution, unless the receipt be first surrendered to the warehouseman or its negotiation enjoined, and the warehouseman cannot be compelled to deliver up the actual possession of the goods until the receipt is surrendered to him or impounded by the court.

The appellee argues that it could not be required to resist a valid writ issued upon the judgment of the court in the attachment suit and prevent the taking of the goods from its possession. The goods were not subject to garnishment under the facts and under the appellee's answer, and the appellee should have seen to it that judgment was not rendered against it, or if such judgment was ren-

dered should have procured a reversal of it if it desired to protect itself. The appellant was not a party to that judgment, had no knowledge of it or of the proceeding in which it was rendered, and if it had had such knowledge could have taken no action in it. The appellee was entitled to be discharged upon its answer. The judgment was rendered on December 3, 1907, soon after the Uniform Warehouse Receipts act was passed, and for that reason the provisions of section 25 of that act may have been overlooked. In any event, the appellee, alone, and not the appellant, was a party to that proceeding and interested in it, and if a wrong judgment was rendered, it is the appellee, and not the appellant, who must answer for it.

The judgments of the Appellate Court and the municipal court will be reversed and the cause will be remanded to the municipal court for a new trial.

*Reversed and remanded.*