LAND, J.
Plaintiff, a commercial firm of the city of London, through Chas. Dittman, a resident of the city of New Orleans, sued to be decreed the owners of 500 bags of coffee, marked “R. H. H.,” shipped by C. F. De Lima & Co., of Santos, Brazil, under certain conditions, in substance as follows:
On June 19,1912, plaintiff company, against said coffee, issued a letter of credit for 2,030 pounds, and on July 30, 1912, received from defendant Richheimer & Co., of Chicago, a trust receipt, wherein the said company agreed to hold said coffee on storage as the property of the plaintiff company.
The petition further represented that said coffee was in the Standard Warehouse Company, of the city of New Orleans, owned by the defendant Stonewall Jackson, who had, at the instance of said Richheimer & Co., issued negotiable receipts therefor.
Plaintiff prayed for a writ of sequestra *800 tion to protect its rights in the premises, and for judgment against Richheimer & Co., in the sum of 2,030 pounds sterling, with interest from judicial demand, maintaining the sequestration, and declaring the plaintiff to be the owners of the property seized under said writ. The 500 bags of coffee were seized under the writ.
The National Bank of the Republic of the City of Chicago, filed a petition of intervention, and third opposition, claiming to be the pledgee of the said 500 bags of coffee, being the holder of certain warehouse receipt dated August 5, 1912, bearing the number 3,527, and issued by the aforesaid warehouse to the defendant, for said coffee, and which was delivered to the intervener and third opponent in consideration of a loan to defendant of $107,621.56, said 500 bags of coffee being part and parcel of 3,152 bags of coffee pledged by defendant to intervener and third opponent as collateral for said loan.
The petition of intervention and third opposition further represented that said National Bank of the Republic was the innocent holder in good faith, for value, of the said receipt, and had a lien and privilege on said property superior to the claim of the plaintiff, and desires recognition thereof and restoration of the property to its possession,, and prayed for judgment accordingly.
The warehouse receipt purports to be a “negotiable warehouse receipt,” issued under Act No. 156 of 1888, and acknowledges the receipt of the 500 bags of coffee from Richheimer & Co., on August 5, 1912, “deliverable only on return of this receipt properly indorsed.”
Defendant Stonewall Jackson, for answer to the petition, admitted the storage of the 500 bags of coffee, and that he still held possession of the same. He averred that as against said coffee he had issued negotiable warehouse receipt No. 3,527, and that under the law said goods could not be taken from his custody without the surrender of said receipt, and that he had certain lawful storage charges against said coffee, secured by first lien and privilege and right of retention superior to all others.
This defendant prayed that the proceedings against him he dismissed. He further prayed that, if the coffee be taken from him without the surrender to him of said warehouse receipt, then full and ample security be given to protect him in the premises, and that his claim for storage be recognized and enforced.
Plaintiff answered the intervention and third opposition of the National Bank of the Republic, averring in substance, that the letter of credit stipulated that the bills of lading for the coffee to be purchased should be made out to the order of the plaintiff, and one of them, with the invoice and correspondence, was to be sent to Charles Dittman Co., agent of the plaintiff. For further answer plaintiff averred that by an agreement indorsed on said letter of credit, and signed by Richheimer & Co., the said company admitted plaintiff’s ownership of all goods purchased under said credit, as well as the proceeds thereof, and all insurance on such goods, and all bills of lading, or warehouse receipts given therefor, and that said company, upon the receipt of the merchandise shipped on the faith of the letter of credit, should give such security as plaintiff should demand, and sign and deliver to the plaintiff a trust receipt for said merchandise in such form as plaintiff might require.
For further answer plaintiff finally averred that on July 30, 1912, the said Richheimer & Co. did deliver to the plaintiff a trust receipt, acknowledging the receipt of the merchandise (coffee) specified in the bill of lading, and agreeing to hold the same “on storage as the property of Messrs. Arbuthnot, Latham & Co.”
*802 For further answer plaintiff averred that the said warehouse receipt was wrongfully issued by the said Jackson to the said Richheimer & Co., not being the owners or the agent of the owners, and that the pretended pledge of said receipt by said company to the intervener was fraudulent, was an attempt to pledge the property of another, and the said intervener knew, or should have known, of the existence of said trust receipt.
For further answer plaintiff averred that the defendant Jackson knew, at the time he issued said receipt, that plaintiff, and not Richheimer & Co., was the owner of the coffee, and knew of the existence of the trust receipt, and is bound to indemnify the plaintiff for whatever loss “they” may suffer in consequence thereof. Wherefore the plaintiff prayed, in the event of a judgment in favor of the intervener, for judgment against the said Jackson for the value of the coffee represented by said warehouse receipt.
Stonewall Jackson excepted to the demands contained in this answer of the plaintiff. The exceptions were sustained.
Stonewall Jackson answered the intervention, the National Bank of the Republic admitting the issuing of the warehouse receipt, setting forth the sequestration of the 500 bags of coffee, and averring that he had, in all respects, complied with all of his obligations as warehouseman. Wherefore he prayed to be dismissed from the proceedings, and that the intervener be directed to deposit the warehouse receipt in the registry of the court, and for its cancellation or return to him.
The case was tried, and judgment was rendered in favor of the plaintiff, recognizing said company as the owner of the 500 bags of coffee, and maintaining the seizure.
The National Bank of the Republic, and Richheimer & Co. through its trustee in bankruptcy, have appealed.
After the 500 bags of coffee in controversy reached the port of New Orleans, Charles Dittman Company, agent for the plaintiff, on July 30, 1912, delivered the same to Richheimer & Co., taking their receipt, reading in part as follows:
“And in consideration thereof we agree to hold said merchandise in storage' as the property of Messrs. Arbuthnot Latham & Co., with liberty to sell the same, and account for the proceeds to their said attorneys.
“In case of sale we agree to hand the proceeds when received to their said attorneys, so as to provide for the payment of Messrs. Arbuthnot, Latham & Co.’s acceptance on over (our?) account.
“We further agree to keep the said merchandise insured, etc.; * * * the intention of this agreement being to preserve unimpaired the lien of Messrs. Arbuthnot, Latham & Co.’s said property.”
On August 5, 1912, said S. Jackson issued a receipt for said 500 bags of coffee, acknowledging receipt of the same in apparent good order from Messrs. Richheimer & Co., on storage in his Standard Warehouse, “deliverable only on return of this receipt properly indorsed.”
The receipt in the record bears on its margin the words, “Negotiable Warehouse Receipt,” and on its back an indorsement in name of “Richheimer & Co.”
This warehouse receipt was produced by the intervener and third opponent, and the evidence shows that the National Bank of the Republic acquired said receipt in good faith, for value, in the usual course of business. Chas. Dittman, Sr., testified that the transaction in question differed from the many previous transactions of the same kind between the plaintiff and Richheimer & Co. only in one particular, and that was in the failure of Richheimer & Co. to pay the amount due the plaintiff for . advances, etc., on account of this lot of coffee. Richheimer & Co. had, for years, been financed in its business by the National Bank of the Republic, securing loans of money by pledges of warehouse receipts for coffee. It is not probable that plaintiff’s agents in New Or *804 leans and In Chicago were ignorant of this course of business between Richheimer & Co. and said bank; and its agents in New Orleans must have known that Richheimer & Co., in the usual course procured warehouse receipts for all coffee represented by the bills of lading.
In this, and similar previous transactions between the parties, plaintiff furnished the money or credit, to enable Richheimer & Co. to purchase coffee in Brazil, and took the bills of lading in its own name as a security. On the arrival of the shipment at New Orleans, the plaintiff indorsed and delivered the bill of lading to Richheimer & Co., and took in lieu thereof a trust receipt, which obligated the said firm to hold the coffee as the property of the plaintiff, with liberty to sell the same and account for the proceeds to their said attorneys, Charles Dittman & Co., the expressed intention of the agreement being to preserve unimpaired the lien of plaintiff on the said property. It is obvious that plaintiff could not have^ a lien on its own property. The trust receipt at most was a private agreement between the parties, which, of course, did not affect third persons without notice. The transaction, as revealed to the business public, disclosed that the coffee was delivered to S. Jackson, a holder of the bill of lading, and that Jackson, as proprietor of the Standard Warehouse had issued a warehouse receipt for the coffee to Richheimer & Co., who in due course pledged the same to the National Bank of the Republic.
As a matter of law the plaintiff was never the owner of the coffee. As pledgees they delivered the actual possession of the coffee to the pledgor, and by so doing enabled him to dispose of the same as his own property.
[1] This is a stronger case than that of Commercial National Bank of New Orleans v. Canal-Louisiana Bank & Trust Co., et al., 239 U. S. 520, 36 Sup. Ct. 194, 60 L. Ed. 417, decided by the Supreme Court of the United States on January 10, 1916. In that case, the court considered the effect of the negotiation of warehouse receipts as defined in the Uniform Warehouse Receipts Act enacted in Louisiana by Act 221 of 1908, and, speaking through Mr. Justice Hughes, said, inter alias:
“The clear import of these provisions is that, if the owner of the goods permits another to have the possession or custody of negotiable warehouse receipts running to the order of the latter, or to bearer, it is a representation of title upon which bona fide purchasers * * * are entitled to rely, despite breaches of trust or violations of agreement on the part of the apparent owner.”
In that case Dreuil & Co. had pledged a bill of lading to the Canal-Louisiana Bank, and was permitted to withdraw the document on executing a trust receipt. Dreuil & Co., then, as holder of the cotton, stored it in their own name, and pledged the warehouse receipt to the Commercial Bank. The court decided in favor of the Commercial Bank, because the Canal-Louisiana Bank had clothed Dreuil & Co. with the indicia of ownership ; that is, had delivered to said company the bill of lading for the cotton. As to the authority of Dreuil & Co. to store and obtain a warehouse receipt for the cotton, the court said:
“But it cannot be said that it was not within the contemplation of the parties that Dreuil & Co., on obtaining the goods from the railroad company, should put them in warehouse and take the usual receipts.”
The court also said:
“We think that the principle of the Uniform Act should have recognition to the exclusion of any inconsistent doctrine which may have previously obtained in any of the states enacting it.”
In his pleadings the plaintiff does not assail the warehouse receipt in question as nonnegotiable because not in the form prescribed by section 2 of Act No. 221 of 1908, but that is plaintiff’s main contention in this court. Said warehouse receipt reads as follows:
*806 “No. 3527. New Orleans, Aug. 5th, 1912.
“S. Jackson, proprietor of the Standard Warehouse, conducting a public warehouse business under Act 156 of 1888, and the general laws of the state of Louisiana does hereby acknowledge to have received in apparent good order from Mess. Richheimer & Co., on the 5th day of August, 1912, on storage in his Standard Warehouse 'Second Division, the following described property, deliverable only on return of this receipt properly indorsed. The proprietor is not accountable for leakage and depreciation.
Marks.
No. Packages.
Description of Articles.
Delima RHH A 1/5
500
Five hundred bags coffee Ex. S. S. Artist
“[Original signed] S. Jackson.
........Insurance Co. New Orleans........
“The above-mentioned property insured in our office for the pterin of..................
In left-hand, margin:
“Negotiable warehouse receipt issued by S. Jackson, proprietor of the Standard Warehouse, Eront, Howard avenue, Eulton and Triangle streets.”
This receipt was indorsed:
“Richheimer & Co.”
[2] Plaintiff alleges in its petition that Jackson “issued negotiable receipts” for the coffee.
Section 2 of said act, after declaring that “warehouse receipts need not be in any particular form,” provides that every such receipt must embody within its. written or printed terms certain enumerated particulars, and concludes as follows:
“A_ warehouseman shall be liable to any person injured thereby for all damage caused by the omission from a negotiable receipt of any of the terms herein required.”
The receipt in question does not contain “the rate of storage charges” or “statement of advances made and of liabilities incurred for which the warehouseman claims a lien.” Did the omission of such requirements destroy the character of the instrument as a warehouse receipt? The statute does not so declare, but does provide that in such a case the warehouseman shall be liable to any person injured thereby for all damage caused by such omissions.
It is not reasonable to suppose that the lawmaker contemplated the nullification of otherwise valid warehouse receipts for the omission of “the consecutive number of the receipt,” or “the location of the warehouse,” or “the rate of storage charges.”
This common sense construction of section 2 has been adopted in Manufacturers’ M. Co. v. Monarch R. Co., 266 Ill. 584, 107 N. E. 885, and in New Jersey Title Guaranty Trust Company v. Rector, 76 N. J. Eq. 587, 589, 75 Atl. 931. See, also, In re Reichheimer, Arbuthnot v. Central Trust Co., 221 Fed. 16, 136 C. C. A. 542, decided in favor of banks holding warehouse receipts pledged by Richheimer. In that case a writ of certiorari was denied by United States Supreme Court. That case is similar to the one at bar, the difference being that the coffee was stored in Chicago.
Act No. 221 of 1908, § 4, defines nonnegotiable receipts as “a receipt in which it is stated that the goods received will be delivered to the depositor or to any other specified person.”
The same act (section 5) defines negotiable receipts as:
“A receipt in which it is stated- that the goods received will be delivered to the bearer, or to the order of any person named in such receipt.”
[3] The receipt in question does not make the goods deliverable to the depositor, but “only on the return of this receipt properly indorsed,” and Richheimer & Co., the depositor, was the only pgrson named in the receipt, and therefore the only person who could properly indorse it. “Order” means an order by indorsement on the receipt. Id. § 58. The intent to make the instrument a “negotiable warehouse receipt” was written on its face, and is necessarily implied by *808 the words, “properly indorsed,” which presuppose that the depositor has the capacity to transfer the receipt by his indorsement. As the receipt by its terms makes the goods deliverable only on the return of the receipt properly indorsed, we must construe it as authorizing the depositor to indorse, or as making no provision whatever for the delivery of the goods to any person. The last construction is not permissible, because it would render the cause nugatory. Civil Code, art. 1951.
This is the first case in which this court has been called upon to consider and construe the Uniform Warehouse Receipts Act. The decisions of our predecessors, cited by counsel for the plaintiff, relating to warehouse receipts, pledges, etc., have no direct bearing on the issues before us. In the case of the Commercial National Bank v. Canal-Louisiana Bank cited supra, the Supreme Court of the United States said:
“We do not find it necessary to review these decisions. It is apparent that if these Uniform Acts are construed in the several states adopting them according to former local views upon [leading] analogous subjects, we shall miss the desired uniformity and we shall erect upon the foundation of uniform language separate legal structures as distinct as were the former * * * laws.”
The contention that the pledge of the warehouse receipt nine days before the bankruptcy of Richheimer & Co., under circumstances raising a presumption that the pledgee bank had knowledge of the pledgors’ insolvent condition, was null is outside of the pleadings in this case, which contain nó reference whatever to the alleged bankruptcy of Richheimer & Co.; surely a revocatory action cannot be injected into a suit by argument of counsel.
It is therefore ordered that the judgment appealed from be reversed, and it is now ordered that the National Bank of the Republic, intervener and third opponent, have and recover possession of the 500 bags of coffee seized in this suit, with recognition and enforcement of said bank’s pledge thereon according to law. And it is further ordered that the writ of sequestration and attachment herein sued out be set aside, and that plaintiff’s suit be dismissed, and that all costs of this litigation in the court below and in this court be paid by the plaintiff. And it is finally ordered that intervener’s and third opponent’s claim for damages, if any, be reserved.
O’NIELL, J., dissents.