12          APPELLATE COURTS OF ILLINOIS.

Madison & Kedzie St. Bk. v. Garfield Pk. Stor. Co., 240 Ill. App. 12.

## Madison & Kedzie State Bank, Appellant, v. Garfield Park Storage Company, Appellee.

### Gen. No. 30,423.

1. INTERNAL REVENUE AND CUSTOMS—*lien created by imposition of specific tax upon distilled spirits.* The Act of Congress of October 3, 1917, levying a specific tax of $2.10 per gallon upon distilled spirits held by any person or corporation on that day created a lien upon the specific property so taxed, without regard to its individual ownership.

2. INTERNAL REVENUE AND CUSTOMS—*rights of pledger and pledgee of stored spirits as alike subject to paramount lien of government for specific tax imposed thereon by Act of Congress.* Where at the time of the enactment of the Act of Congress of October 3, 1917, levying a specific tax of $2.10 per gallon upon distilled spirits, a quantity of such liquor was in storage and the warehouse receipts covering the same were in pledge to secure a loan to the original holder, and no third party rights were involved, both the original holder and the pledgee of the receipts held subject to the paramount lien of the government for such tax.

3. WAREHOUSES AND STORAGE—*duty of warehouseman upon seizure of spirits held under negotiable receipts by virtue of distress warrant issued on account of nonpayment of federal tax thereon.* A warehouseman with whom distilled spirits were stored on the effective date of Act of Congress of October 3, 1917, imposing a specific tax of $2.10 per gallon thereon, was under no obligation to pay the tax so imposed to avoid seizure of the spirits under a distress warrant issued on account of the nonpayment of the tax by the owners thereof, nor to bring suit to recover back the tax, nor to institute replevin against the purchasers of the spirits at the sale thereof under the distress warrant, but performed his full duty as bailee by informing the officer seizing the spirits that the same were held under negotiable warehouse receipts outstanding in the hands of a pledgee thereof, and by notifying such pledgee of the seizure of the spirits and the date when the same would be sold under the distress warrant.

4. WAREHOUSES AND STORAGE—*seizure of stored spirits for nonpayment of federal tax as excusing obligation to redeliver on demand of holder of warehouse receipts.* A warehouseman from whom distilled spirits held under negotiable warehouse receipts outstanding in the hands of a pledgee thereof were taken under a distress warrant on account of the nonpayment by the owners

of the tax imposed by Act of Congress of October 3, 1917, was excused by reason of such seizure from redelivering the spirits to the holder of the warehouse receipts.

Appeal by plaintiff from the Circuit Court of Cook county; the Hon. PHILIP L. SULLIVAN, Judge, presiding. Heard in the second division of this court for the first district at the October term, 1925. Affirmed. Opinion filed March 16, 1926.

MOSES, KENNEDY, STEIN & BACHRACH, for appellant; WALTER BACHRACH and ISAAC E. FERGUSON, of counsel.

WINSTON, STRAWN & SHAW, for appellee; JOHN C. SLADE, JAMES H. CARTWRIGHT, GEORGE T. EVANS and PAUL H. MOORE, of counsel.

MR. JUSTICE FITCH delivered the opinion of the court.

This is an appeal from a finding and judgment for defendant in an action brought against it by the legal holder of two of its negotiable warehouse receipts, to recover the value of sixteen barrels of whisky therein described, which were seized and sold by the United States internal revenue collector, under a distress warrant issued on account of the nonpayment of taxes assessed against the same in the name of the original holder of the warehouse receipts.

The case was tried upon a written stipulation of facts. The property in question was stored in defendant's warehouse in August, 1917, by one Richard Lange, who received from defendant at that time two negotiable warehouse receipts for the same. At or about the same time, Lange indorsed and delivered the receipts to the plaintiff as security for advances made to him by the plaintiff amounting to $1,801.50, and that fact was known to defendant. On May 17, 1918, the property was levied upon, distrained and taken from defendant's possession by a deputy collector of internal revenue, who, according to the stipulation,

was "acting pursuant to a valid warrant regularly issued in accordance with the statutes of the United States * * * for the seizure of the property of said Richard Lange for failure on the part of said Richard Lange to pay internal revenue due from him to the United States in the sum of $3,165.87." The stipulation also states that "said distraint warrant was issued and levied for taxes regularly levied and assessed against said Richard Lange under the Act of Congress of October 3, 1917, on said sixteen barrels of whisky and on other liquor belonging to Richard Lange in which plaintiff had no interest"; that the tax on said sixteen barrels of whisky, "namely, on 582.31 gallons, amounted to $1,222.87"; that at the time of such seizure, defendant notified the collector that the warehouse receipts for the whisky were "in the hands of plaintiff, as pledgee for value as aforesaid"; that four days later, defendant notified the plaintiff of the levy of the distress warrant by the collector, and on June 13, 1918, also notified plaintiff's attorneys that the whisky would be sold by the government for nonpayment of taxes of Richard Lange, at public auction, on June 17, 1918; that "no legal proceedings to prevent such sale" were instituted by plaintiff; that on June 17, 1918, "after due notice and in accordance with the statutes of the United States," the property was sold by the collector; that the market value of the property at the time of such seizure, if sold free and clear of all taxes, was $4,000; and that no legal proceedings against the government on account of such seizure and sale were commenced by either plaintiff or defendant.

In plaintiff's brief it is said that the sole question presented is "whether defendant could justify its failure to redeliver the sixteen barrels of whisky to plaintiff under the negotiable warehouse receipts held by plaintiff, by reason of the seizure of the whisky by the collector of internal revenue under the distraint war-

rant against Richard Lange for the non-payment of taxes.''

Upon this question, plaintiff contends that by the indorsement and delivery of the negotiable warehouse receipts to plaintiff in August, 1917, it became, in legal effect, under the provisions of the Warehouse Receipts Act, a bona fide purchaser for value of the property represented by the receipts; that such indorsement and delivery to the plaintiff of the warehouse receipts ''was tantamount to a physical transfer of possession of the property, with clear and complete legal title against all the world,'' and that ''it is utterly inconsistent with negotiability that the transferor of the warehouse receipts should still retain an interest in the property subject to a levy for his taxes or other indebtedness.''

The contention as thus stated assumes that a tax is in the same category as ''other indebtedness,'' and also assumes that an internal revenue tax on whisky is to be considered and treated as a personal tax against the holder of the legal title to the whisky. The first assumption is wholly unwarranted, and the second is very doubtful.

If the property had been taken from defendant's possession under any ordinary process for the collection of a debt due from Lange, it is clear that such a levy would have been illegal because of the provision forbidding such a levy, contained in section 25 of the Warehouse Receipts Act. [Cahill's St. ch. 114, ¶ 260.] In such case it would have been defendant's duty to prosecute an appeal from any decision to the contrary, as was held in *Manufacturers' Mercantile Co. v. Monarch Refrigerating Co.*, 266 Ill. 584, cited and relied on by plaintiff. But a tax is not a debt in the ordinary sense of that word, nor is the government a creditor in the usual sense of that term. Taxes are enforced contributions for the support of the government and the government's ''claim for the payment of taxes

upon the citizen is therefore, of necessity, paramount to all other claims against his property." (*Jack v. Weiennett*, 115 Ill. 105, 110; *Wabash Eastern Ry. Co. v. East Lake Fork Spec. Drain. Dist. Com'rs*, 134 Ill. 384, 399.) In the case last cited, the court said that "every property owner holds his property subject to the exercise of the taxing power."

Nor is a distress warrant issued under the provisions of the internal revenue laws of the United States ordinary process of the same character as that mentioned in section 25 of the Warehouse Receipts Act. It is an extraordinary process permitting seizure and sale of the property, after notice and demand for the payment of the taxes, without any judicial proceedings whatever, and, as will be shown hereafter, is a process the execution of which can only be prevented by paying the tax demanded.

By the Act of Congress of October 3, 1917, referred to in the stipulation and distress warrant, a specific tax of $2.10 a gallon was ordered to be "levied, assessed, collected and paid," upon all distilled spirits held by any person or corporation on the day the act was passed, if intended for sale for beverage purposes or for use in the manufacture or production of any article used or intended for use as a beverage. The stipulation shows that this was the amount per gallon assessed against the property in question. It was therefore a specific tax against the property, rather than a personal tax against any individual or corporation. The general provisions of the Internal Revenue Act provide how such tax shall be levied, assessed and collected, and section 3186 provides that the amount of such taxes shall be a lien in favor of the United States from the time when the assessment list was received by the collector. Just when it was received by the collector in this case does not appear from the stipulation, but it must be assumed that it was some time after October 3, 1917, and before May

15, 1918, when the distress warrant was issued. The lien thus given is a lien on the specific property and is more in the nature of the lien of the State for taxes on real estate than the general lien usually given by statute against all the personal property of an individual or a corporation for personal property taxes. Such specific liens attach to the *res* without regard to individual ownership. (*Osterberg v. Union Trust Co.*, 93 U. S. 424, quoted with approval in *Wabash Eastern Ry. Co. v. East Lake Fork Spec. Drain. Dist. Com'rs, supra.*)

The real question here involved, therefore, is not whether, after Lange had transferred the warehouse receipts to the plaintiff, he retained any interest in the property that could be levied upon by his *creditors*, but whether, as between him and the plaintiff, Lange was chargeable with the payment of the specific tax levied by the government on the property. According to the stipulation, the plaintiff held the warehouse receipts as security for payment of Lange's notes for less than half the value of the property. As between plaintiff and Lange, the plaintiff's loan on the property was the extent of plaintiff's interest therein. As between them, it was Lange's property, subject to plaintiff's right to hold the legal title to it until its loan was paid. As no rights of third parties are involved, we think the interests of both Lange and plaintiff were held subject to the claim and lien of the government for taxes, which might lawfully be assessed against either.

But if it be conceded that in May, 1918, Lange had no such interest in the property as would authorize the assessment of the specific tax of $2.10 a gallon against him, and that therefore the seizure and sale of the property under a distress warrant *against him* was illegal, then the only question to be determined is whether it was defendant's duty or that of the plaintiff to take whatever steps might legally be taken

18     APPELLATE COURTS OF ILLINOIS.

Madison & Kedzie St. Bk. v. Garfield Pk. Stor. Co., 240 Ill. App. 12.

to prevent the sale or to recover possession of the property sold.

Section 3224 of the United States Revised Statutes provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court." In *Graham v. Dupont*, 262 U. S. 234, after referring to several earlier cases mentioned in the opinion, it was said (p. 255): that "the system prescribed by the United States in regard to both customs duties and internal revenue taxes, of stringent measures not judicial, to collect them, with appeals to specified tribunals and suits to recover back moneys illegally exacted, was a system of corrective justice intended to be complete, and enacted under the right belonging to the government to prescribe the conditions on which it would subject itself to the judgment of the courts in the collection of its revenues. In the exercise of that right, it declares, by § 3224, that its officers shall not be enjoined from collecting a tax claimed to have been unjustly assessed, when those officers, in the course of general jurisdiction of the subject matter in question, have made the assessment and claim that it is valid."

In *Sheridan v. Allen* (C. C. A., 8th Cir.), 153 Fed. 568, it was held that a sale of property by an internal revenue officer under a distress warrant for the collection of a tax does not, however, cut off the title of a third person who does not owe the tax "and against whose property the warrant is not directed," and that the true owner may assert his title to the property by replevin against the purchaser at the sale after possession has been delivered to him by the collector.

Under these decisions, when defendant was confronted with the distress warrant, there was nothing it could do to prevent the sale except to pay, under protest, the tax demanded by the collector, appeal to the Commissioner of Internal Revenue, and sue to recover it back as provided by the revenue laws. But

defendant was under no legal obligation to pay the tax. It was a mere bailee for the plaintiff. It did all that was required of it when it informed the officer that the goods were held under negotiable warehouse receipts which were outstanding in the hands of the plaintiff, and notified the plaintiff of the seizure and the date when the property would be sold under the distress warrant. Plaintiff might then either have paid the tax to prevent the sale and sued to recover it back, as provided by the revenue laws, or it could ignore the sale and assert its title to the property in an action of replevin against the purchaser at the sale. Either of these courses would doubtless have been effective to protect the plaintiff's interest in the property, and both required action on plaintiff's part and not on the part of the defendant.

Plaintiff's counsel suggest that defendant might have brought the same kind of an action against the purchaser at the sale, upon the theory that defendant as warehouseman was entitled to the possession as against anyone other than the plaintiff. Assuming, but not deciding, that such an action might have been maintained by defendant, we think defendant was under no obligation to do so. As we understand the provisions of the Act of October 3, 1917, plaintiff, as the holder of the legal title to the property, was primarily liable for the amount of the tax thereon and it was therefore its duty to pay the tax, even though the tax was assessed in the name of Lange. Certainly, that was its duty if, as its counsel claim, Lange had no interest whatever in the property, as such, after the transfer of the warehouse receipts to the plaintiff.

The property was taken from defendant's possession under the exercise of a right paramount to that even of the legal holder of the title, and which defendant was powerless to resist. Where such is the fact, we think the warehouseman is excused from a failure on his part to redeliver the goods to the holder of the

warehouse receipts. Such, in effect, is one of the principles decided in the recent case of *Rudin v. King-Richardson Co.*, 311 Ill. 513.

For the reasons stated the judgment is affirmed.

*Affirmed.*

BARNES, P. J., and GRIDLEY, J., concur.