[No. 18065. Department One. January 23, 1924.]

## H. B. Arnold, *Respondent*, v. Roy Peasley *et al.*, . *Defendants*, Washington Wheat Growers Association; *Appellant*.[1]

Chattel Mortgages (37)—Warehousemen (3)—Scope of Lien—Receipts—Transfer—Priority. The purchaser of a negotiable warehouse receipt does not acquire title to the property described therein free and clear of a prior mortgage or other lien; Rem. Comp. Stat., § 3634 and § 3635, being only designed to prevent assertion of a secret lien or title accruing subsequently to the issuance of the receipt, as against the transferee; in view of Id., § 3779 and § 3782, relating to the recording of chattel mortgages and making the record thereof notice to all the world, not excepting purchasers of negotiable warehouse receipts.

Warehousemen (2)—Receipts—Duty—Crop Subject to Mortgage. A warehouseman is not required to issue a negotiable warehouse receipt upon wheat which was subject to a crop mortgage, under Rem. Comp. Stat., § 3587, requiring receipts to be issued as provided in the act, in view of §§ 3590 and 3593, authorizing nonnegotiable receipts.

Chattel Mortgages (37)—Warehousemen (2-1)—Secret Liens—Priority. A marketing agreement between the grower of wheat and a wheat growers association is in the nature of a secret lien, which would not, in the absence of notice, affect a subsequent mortgagee of the crop or a warehouseman issuing a warehouse receipt for the crop.

Chattel Mortgages (52)—Warehousemen (6)—Action for Damages—Parties. A warehouseman issuing a negotiable warehouse receipt upon wheat which was subject to crop mortgage, and which he shipped out on the order of the purchaser of the receipt, is a proper party to an action to recover on the mortgage note and for a conversion of the wheat covered by the mortgage.

Appeal from a judgment of the superior court for Spokane county, Lindsley, J., entered November 14, 1922, upon findings in favor of the plaintiff, in an action on a promissory note, tried to the court. Reversed.

*Garrecht & Twohy,* for appellant.

*E. O. Connor,* for respondent.

[1]Reported in 222 Pac. 472.

TOLMAN, J.—The plaintiff, Arnold, by this action sought to recover upon a promissory note secured by a crop mortgage upon certain wheat, and to obtain a judgment against the defendant Washington Wheat Growers Association for the value of the mortgaged wheat, which, it is alleged, it had received and converted.

It appears that the note was for one thousand dollars and interest, was executed by defendants Peasley and wife on November 20, 1920, due one year after date, and payable to the order of the defendant Nash. The mortgage was of the same date and covered two-thirds of the crop to be grown by the Peasleys upon certain described land, and was properly executed and filed for record. Afterwards and before maturity, for value, Nash duly assigned the note and mortgage to the plaintiff, Arnold. Peasley raised and harvested the mortgaged crop and delivered 645.49 bushels thereof to one J. J. Goebel at a warehouse conducted by him at Manito, Washington, within the county where the mortgage was of record, and received therefor a negotiable warehouse receipt in regular form, showing the wheat to be deliverable to the order of Peasley on surrender of the warehouse receipt, subject to nothing except handling and storage charges. Peasley, who was under written contract with the defendant Washington Wheat Growers Association to deliver all of the wheat grown by him to it, thereupon indorsed and delivered the warehouse receipt to the association and obtained from it advances amounting to $571 with which to discharge claims for wages, threshing bills and other like expenses, all of which are alleged to have been lienable claims under our statute. The warehouseman being pressed for storage room had, prior to the receipt of the wheat by him, arranged with the defendant associa-

tion that, for his own accommodation, he might ship its wheat to outside points for storage, and before this warehouse receipt was delivered to the association he had overshipped for its account more than the amount of wheat now in controversy. When the association received the warehouse receipt it indorsed it "surrendered for shipment only," and delivered it to the warehouseman on account of previous overshipment.

The complaint, in the usual form, sets up such of the foregoing facts as tend to establish the plaintiff's cause of action, with further allegations necessary to make him a holder of the note in due course. Defendants Peasley and wife and Nash and wife defaulted. Defendant Washington Wheat Growers Association appeared by a motion for leave to interplead Goebel or his personal representatives, and by amended answer, after making appropriate denials as to the conversion, etc., set out its marketing agreement with the defendant Peasley; alleged that the original payee of the note, Nash, and the plaintiff, Arnold, at all times had notice and knowledge of the terms of this agreement; alleged in detail the defensive matters already referred to, and further alleged that the advance of $571 was made to Peasley by the direction of plaintiff, Arnold, for the purpose of satisfying lienable claims against the wheat. A motion to strike the affirmative allegations of the amended answer was interposed.

The trial court denied the motion to interplead Goebel, and granted the motion to strike. The association electing to stand on its answer, a default was entered against it. Plaintiff's proofs were received, and findings and a judgment entered in his favor in accordance with the prayer of his complaint. From this judgment, the defendant Washington Wheat Growers Association has appealed, and presents several interesting questions for our consideration.

The appellant seems to contend that the purchaser of a negotiable warehouse receipt acquires title to the property therein described, free and clear of all prior mortgage or other liens not mentioned in the receipt itself. Our statute, § 3587 *et seq.*, Rem. Comp. Stat. [P. C. § 7141], (the uniform act of 1913) seems intended to make these receipts such evidence of title as will cause them to be accepted in the usual course of commercial transactions, without investigation as to antedating facts; and as, in such transactions, the money usually passes upon the transfer of the receipt, it is manifest that protection must be given to such purchasers, if that be possible without injustice to others. The two sections of the act which most nearly affect the present question are §§ 3634 and 3635 [P. C. §§ 7188, 7189], which read:

"Where a person having sold, mortgaged or pledged goods which are in a warehouse and for which a negotiable receipt has been issued, or having sold, mortgaged, or pledged the negotiable receipt representing such goods, continues in possession of the negotiable receipt, the subsequent negotiation thereof by that person under any sale, or other disposition thereof to any person receiving the same in good faith, for value and without notice of the previous sale, mortgage or pledge, shall have the same effect as if the first purchaser of the goods or receipt had expressly authorized the subsequent negotiation."

"Where a negotiable receipt has been issued for goods, no seller's lien or right of stoppage in transit shall defeat the rights of any purchaser for value in good faith to whom such receipt has been negotiated, whether such negotiations be prior or subsequent to the notification to the warehouseman who issued such receipt of the seller's claim to a lien or right of stoppage in transit. Nor shall the warehouseman be obliged to deliver or justified in delivering the goods to an unpaid seller unless the receipt is first surrendered for cancellation."

The evident purpose, and we think the sole purpose, of these sections is to prevent the asserting of a secret lien or title, or one accruing subsequently to the issuance of the receipt, as against the transferee of the warehouse receipt, and they are not intended to, and do not in any way, modify or repeal the positive provisions of our statute relating to the recording of chattel mortgages. A crop mortgage is authorized and made valid by our statute, Rem. Comp. Stat., § 3779 [P. C. § 9759], and the recording thereof is made notice to all the world, Rem. Comp. Stat., § 3782 [P. C. § 9761], not excepting purchasers of negotiable warehouse receipts, or any other. The mortgage in question was made and filed for record in accordance with these statutes, and that the wheat was so mortgaged was, or should have been, known to the warehouseman when the mortgagor delivered it to him. The warehouse act does not require nor permit a warehouseman to insert in a negotiable receipt a provision or recital that the goods are held subject to a prior mortgage, but does require him to deliver the goods to the holder of the receipt, or a transferee, except only that he has a right to protect himself against those asserting adverse claims to the property, by interpleader as described in §§ 3603 and 3694 [P. C. §§ 475, 7157]. The first section of the act, 3587, reads: "Warehouse receipts may be issued by any warehouseman, and must be issued in manner and form as provided by this act," which, of course, means that the warehouseman may refuse to receive and receipt for mortgaged property, or at least may refuse to issue a negotiable receipt therefor. Of course, if in this instance the warehouseman had issued a non-negotiable receipt, marked as such, as provided in and required by §§ 3590 and 3593 [P. C. §§ 7144, 7147], of the act, no such question as we have here could have arisen.

We realize that this view of our statute law will place a great burden upon warehousemen, but it is the legislature and not the court which has so placed the burden, and warehousemen can protect themselves and the public generally by refusing to issue negotiable receipts in all cases where the property is not shown to be free of recorded liens. In the case of secret liens, of which the warehouseman has no notice, of course a different rule will apply. *Commercial National Bank of New Orleans v. Canal-Louisiana Bank & Trust Co.*, 239 U. S. 520; *Arbuthnot, Latham & Co. v. Richheimer & Co.*, 139 La. 797, 72 South. 251.

The marketing contract between Peasley and appellant, even if as between the parties we should consider that the title passed, would be in the nature of such a secret lien, and in the absence of notice, neither the subsequent mortgagee nor the warehouseman would be affected thereby.

What we have said indicates that the warehouseman was at least a proper party to this action, and the motion for leave to interplead him should have been granted. Moreover, the allegations of the amended answer, to the effect that the advances were made by appellant to Peasley by the direction of respondent, tendered an issue upon which appellant was entitled to offer its proof.

The judgment is therefore reversed, and the cause remanded for further proceedings not inconsistent with these views.

MAIN, C. J., HOLCOMB, PARKER, and MACKINTOSH, JJ., concur.