[No. 23870.  Department Two.  August 11, 1932.]

THE STATE OF WASHINGTON, *on the Relation of the Pacific Coast Elevator Company, et al., Plaintiff,* v. THE SUPERIOR COURT FOR GARFIELD COUNTY *et al., Respondents.*[1]

*E. S. Doyle* and *McCamant, Thompson & King,* for relators.

*Pedigo, Watson & Gose,* for respondents.

*The Attorney General* and *E. W. Anderson, Assistant, Amici Curiae.*

MILLARD, J.—A crop of wheat, against which there was an outstanding recorded landlord's lien, was stored by the lessee, to whom negotiable receipts for the wheat were issued by the warehouseman. These receipts were thereafter negotiated by the lessee and others. May the lien be foreclosed and the warehousemen compelled to deliver up the actual possession of

[1]Reported in 13 P. (2d) 900.

the wheat to the purchaser of same at sheriff's sale if the receipts are not surrendered to the warehousemen or impounded by the court? That is the question presented by this cause, which is before us upon the application of the Pacific Elevator Company and the Ilia Warehouse & Milling Company for a writ of prohibition.

The facts are as follows: George W. Shepherd, as tenant under a lease duly acknowledged and recorded, produced in 1930 a crop of wheat on the lands of John D. Ankeny in Garfield county. The lease reserved a cash rental of eight thousand dollars due on or before the first day of December of each year, following harvest. When the crop was harvested, Shepherd stored same in the two warehouses of the Pacific Coast Elevator Company and the Ilia Warehouse & Milling Company in Garfield county, receiving therefor in his name two negotiable warehouse receipts, which he and others thereafter negotiated. Mr. Ankeny did not have any knowledge, nor did he consent to the storing of the wheat or the issuance or negotiation of the warehouse receipts.

In February, 1931, the 1930 rental being unpaid, Mr. Ankeny instituted an action in Garfield county to foreclose his lien. He joined as parties defendant his lessee, the two warehouse companies and the several parties (Farmers National Bank of Pomeroy, Pomeroy Grain Growers, Inc., North Pacific Grain Growers, Inc., and the Farmers National Grain Corporation) to and by whom the warehouse receipts had been negotiated, so far as then known to the plaintiff. The court entered an order restraining the several defendants, "during the pendency of this cause, or until the further order of the court," from negotiating or in any way disposing of the warehouse receipts covering the wheat and from disposing of or removing from

the warehouses any of the wheat in question. The two warehouse companies made no appearance, and a default was entered against them.

The trial of the cause resulted September 29, 1931, in a decree adjudging plaintiff's lien upon and against the stored wheat "superior to any and all right, title, interest, lien or claim of each and all of the several defendants." The lien was foreclosed, and the sale of the wheat ordered to satisfy the plaintiff's lien. On July 28, 1931, which was prior to the entry of the final decree and during the pendency of the order restraining the defendants from "negotiating, transferring, or in any way disposing of any warehouse receipts covering the crop of wheat," etc., the two warehouse companies took up the original warehouse receipts and in lieu thereof issued new negotiable receipts. To whom the reissued negotiable receipts were delivered, the record does not disclose except by inference.

As ordered by the decree, from which none of the defendants appealed, the sheriff sold the wheat under an order of sale issued March 8, 1932. The two warehouse companies (the Pacific Coast Elevator Company and the Ilia Warehouse & Milling Company) refused to deliver the wheat to the purchaser at the sheriff's sale until the warehouse receipts for the wheat were surrendered to the warehouse companies. Thereupon, pursuant to the petition of the plaintiff, the court entered an order requiring the warehouse companies to show cause why they should not be compelled to deliver the wheat to the purchaser. In that petition, the plaintiff alleged that the receipts were probably held and controlled by the Federal Intermediate Credit Bank at Spokane as collateral for a loan made to the North Pacific Grain Growers, Inc., or to George W. Shepherd or Pomeroy Grain Growers, Inc.

In response to the order to show cause, the two

warehouse companies set up the foregoing facts and filed petitions to dissolve and set aside the levy and sale, on the ground that the order was entered without the court having jurisdiction of the warehouse receipts or the holder thereof. The warehouse companies prayed that they be not compelled to deliver up the possession of the wheat until the receipts were surrendered to them or impounded by the court. At the hearing upon the order to show cause why the wheat should not be delivered to the purchaser, the court announced its purpose to enter an order compelling the two warehouse companies to deliver the wheat to the purchaser at the sheriff's sale without requiring the impounding or surrender of the warehouse receipts.

Mr. Ankeny will be designated plaintiff and the two warehouse companies (the petitioners) will be styled defendants.

Defendants may not now successfully urge that, because the Federal Intermediate Credit Bank was not made a party defendant in the lien foreclosure action and because the warehouse receipts were not surrendered or impounded, the court was without jurisdiction to execute its decree. The trial court had jurisdiction of the parties and of the wheat. The legal title to the wheat was in Shepherd, subject to plaintiff's lien when that wheat was stored and the receipts were issued. Those receipts were pledged by Shepherd as collateral. Although knowing that the Federal Intermediate Credit Bank, when the foreclosure action was commenced, was the owner and holder of the warehouse receipts—a fact not within the knowledge of the plaintiff until subsequent to the entry of the decree in the lien foreclosure action—the defendants did not object to the nonjoinder of that party as a defendant. Failure to object at the proper time to non-

joinder of parties defendant constitutes a waiver of the objection. So, too, the defendants are foreclosed by the decree, from which they did not appeal; in fact, they made no appearance in the action.

The rental lien (Rem. 1927 Sup., § 1188-2) created in favor of a landlord upon crops grown by his lessee applies when the lease is recorded. The recordation of the lease is full and sufficient notice to all the world of the existence and conditions of the landlord's lien. The recording of the lease dispenses with the necessity of filing or recording any other notice or claim of lien for rents during the leasehold period. Rem. 1927 Sup., § 1188-4.

If goods are delivered to a warehouseman by the owner, and a negotiable receipt is issued for them, the statute provides that the warehouseman shall not be compelled to deliver up the actual possession of the goods until the receipt is surrendered to him or impounded by the court.

"If goods are delivered to a warehouseman by the owner or by a person whose act in conveying the title to them to a purchaser in good faith for value would bind the owner, and a negotiable receipt is issued for them, they cannot thereafter, while in the possession of the warehouseman, be attached by garnishment or otherwise, or be levied upon under an execution unless the receipt be first surrendered to the warehouseman, or its negotiation enjoined. The warehouseman shall in no case be compelled to deliver up the actual possession of the goods until the receipt is surrendered to him or impounded by the courts." Rem. Comp. Stat., § 3611.

The landlord's lien against the wheat was of record, as the statute required. The rights of the landlord in the wheat were fixed by the recordation of the lease and the accrual of rent. The lessees and the warehouseman could not destroy those rights by the storing of

the grain and the issuance of negotiable receipts by the latter to the former. When the lessee delivered that wheat to the warehouses, the warehousemen were charged with notice of, and stored the wheat and issued the negotiable receipts subject to, the landlord's lien.

Upon the warehousemen was imposed the duty of protecting themselves and the public by refusing to issue negotiable receipts covering the wheat. That they did not do. In fact, they reissued warehouse receipts for the wheat while the foreclosure action was pending and to which they were parties. The statute does not contemplate that a landlord or a laborer must foreclose his lien against the warehouse receipts instead of against the wheat. Such holding would enable a lessee to deliver the wheat to the warehouseman, obtain negotiable receipts therefor and transfer them beyond the jurisdiction of the court, thereby defeating the lien of the landlord or laborer.

In *Arnold v. Peasly,* 128 Wash. 176, 222 Pac. 472, we held that a purchaser of negotiable warehouse receipts took same subject to all outstanding recorded liens, and that the uniform warehouse receipts act was not intended to in any way modify or repeal the provisions of the statute relating to the recording of chattel mortgages. We said:

"A crop mortgage is authorized and made valid by our statute, Rem. Comp. Stat., § 3779 [P. C. § 9759], and the recording thereof is made notice to all the world, Rem. Comp. Stat., § 3782 [P. C. § 9761], not excepting purchasers of negotiable warehouse receipts, or any other. The mortgage in question was made and filed for record in accordance with these statutes, and that the wheat was so mortgaged was, or should have been, known to the warehouseman when the mortgagor delivered it to him. The warehouse act does not require nor permit a warehouseman to insert in a nego-

tiable receipt a provision or recital that the goods are held subject to a prior mortgage, but does require him to deliver the goods to the holder of the receipt, or a transferee, except only that he has a right to protect himself against those asserting adverse claims to the property, by interpleader as described in §§ 3603 and 3694 [P. C. §§ 475, 7157]. The first section of the act, 3587, reads: 'Warehouse receipts may be issued by any warehouseman, and must be issued in manner and form as provided by this act,' which, of course, means that the warehouseman may refuse to receive the receipt for mortgaged property, or at least may refuse to issue a negotiable receipt therefor. Of course, if in this instance the warehouseman had issued a non-negotiable receipt, marked as such, as provided in and required by §§ 3590 and 3593 [P. C. §§ 7144, 7147], of the act, no such question as we have here could have arisen.

"We realize that this view of our statute law will place a great burden upon warehousemen, but it is the legislature and not the court which has so placed the burden, and warehousemen can protect themselves and the public generally by refusing to issue negotiable receipts in all cases where the property is not shown to be free of recorded liens. In the case of secret liens, of which the warehouseman has no notice, of course a different rule will apply."

Denied.

TOLMAN, C. J., MAIN, HOLCOMB, and BEALS, JJ., concur.