[No. 24197. Department One. April 13, 1933.]

EDWARD DE BOE, *Appellant*, v. PRENTICE PACKING & STORAGE COMPANY, *Respondent*.[1]

[1]Reported in 20 P. (2d) 1107.

*W. A. Hubbert* and *Daniel L. Goodman,* for appellant.

*Rigg, Brown & Halverson,* for respondent.

HOLCOMB, J.—Appellant sued to recover two installments of cash rental, one of five hundred dollars due September 1, 1931, and one of fifteen hundred dollars due November 1, 1931, for the rental of real estate in Yakima county, and to enforce a landlord's lien upon the fruit of an orchard leased to one Woodall and assigned to one Kelly. The fruit was grown in the orchard during the season of 1931, and was ready to pick, pack and market, in October. The lease had not been recorded in the office of the county auditor, but was recorded on October 14, 1931.

Kelly, for the purpose of financing operations on the fruit ranch, had given a chattel mortgage to the First National Bank of Zillah for three thousand dollars. He had been unable to pay this debt and mortgage, and was unable to procure any money from that bank or from any of the fruit marketing concerns in that vicinity; except, through negotiations between Woodall and Kyle, sales manager of respondent, if the bank of Zillah would subordinate its first lien by chattel mortgage to that of the packing company, sufficient money would be advanced to Woodall and Kelly to prepare and preserve the fruit crop for market. This arrangement was agreed to by the bank of Zillah and made known to Mr. and Mrs. J. F. McDermott, who were conceded and asserted by appellant to have been his general agents in all things

concerning the lease and rentals of the ranch. Mrs. McDermott is a sister of appellant.

On October 2, 1931, the preparation for preserving and marketing the crop was somewhat belated, some of the fruit being then overripe. It was absolutely necessary at that time to procure funds for the handling of the crop, or else it would be entirely lost. The McDermotts had diligently attempted to obtain payment of the five hundred dollars rent due in September, and had been unable to do so, because of financial difficulties of Woodall and Kelly, and had become convinced that their sole hope for the collection of the cash rental, both of that installment and the November installment, was out of the proceeds of the sale of the fruit.

On October 7, 1931, both the McDermotts visited the fruit ranch, and in a conversation with both Woodall and Kelly, being satisfied by them that the cash rental could not be obtained in any other way than by the financing arrangement with respondent, and that the bank of Zillah had subordinated its chattel mortgage lien to the claim of respondent, if there was anything left from the proceeds of the crop after respondent had first been satisfied by the payment of all advances and incidental expenses made by it to harvest and market the crop it would go to them, the McDermotts assented thereto.

Counsel for appellant are to be commended for making the following very fair, truthful and convenient summary of the governing facts:

(1)  Woodall and Kelly were delinquent in the payment of cash rental to the lessor, payment of which lessor's general agents, the McDermotts, had unavailingly demanded. Woodall induced respondent to advance money and services upon the supposition that no one, including appellant, had any right, title or

interest in respect to the fruit in question. Appellant and his general agents, as well as Kelly, Woodall and Kyle, sales manager of respondent, all supposed that legal priority was given first to respondent, second to the mortgagee bank, and third to appellant. This supposition of Kelly, the McDermotts and Kyle was based upon Woodall's statement that a lessor, to whom is owing and unpaid a cash rental, has no right, title or interest in or to the crop grown upon the premises upon which a cash rental is due.

(2) On October 14, 1931, appellant's lease was filed for record in the office of the county auditor, and appellant, through his agents, the McDermotts, consulted an attorney, who then informed them that appellant's lien was first in priority.

(3) The McDermotts knew at the time that they first learned of the priority of appellant's lien that respondent was advancing money and furnishing services and materials to prepare and preserve the crop for marketing, acting under the supposition that it had the first or prior claim.

(4) The crop would have been worthless unless the harvesting and preparation of the fruit and storage and marketing had been furnished by respondent.

(5) No conversations, dealings or communications occurred at any time between any agent of respondent and any of appellant's agents. Kyle, sales manager of respondent, knew of the lease, but erroneously supposed that the law gave his company first priority.

(6) Appellant, through his general agents, the McDermotts, permitted respondent to furnish money, material and services after the McDermotts had learned of appellant's priority, without notifying respondent that it was acting under an erroneous supposition of law. The McDermotts remained silent,

and, upon the accrual of the third rental installment of fifteen hundred dollars, instituted proceedings to foreclose appellant's lien. The institution of this suit was the first intimation received by respondent that any one had, or was making, a claim upon the fruit prior to that of respondent.

In this action, Woodall and Kelly were joined as defendants, but Woodall, probably because he had become bankrupt, did not appear. The contest on appeal is waged entirely between appellant and the packing company.

In answer to the complaint of appellant, respondent interposed three affirmative defenses: First, an agreement whereby appellant agreed to waive his right to receive rentals in favor of respondent in consideration of respondent advancing money for the harvesting of the crop; second, estoppel of appellant to enforce his rental lien; third, respondent alleged its right to unpack the apples in the event the trial court foreclosed the lien of appellant.

There was no evidence sufficient to sustain the first affirmative defense, and the trial court found in favor of respondent on the ground of estoppel. He said:

"There is no doubt in the court's mind but that the plaintiff had knowledge at all times of the financial arrangements in reference to the harvesting and marketing of the crop. If these arrangements had not been made, it would undoubtedly have been worthless. He now seeks to reap the fruits of the efforts of the Prentice Packing Company. Plaintiff, even after learning that he had a right to a landlord's lien, stood by and permitted the Packing Company to continue with its operations. In my opinion, such conduct cannot be permitted in a court of equity. It shocks the conscience of the chancellor and does violence to equitable principles."

It is true that, under our present statute, Rem. Rev. Stat., §§ 1188-1 and 1188-2, every landlord has a

lien upon crops growing upon leased premises in any year, although the rental is payable wholly or in part in money; and under the provisions of § 1188-4, *supra,* the landlord has such lien when the lease has been recorded in the proper county without the necessity of filing a claim of lien. *State ex rel. Pacific Coast Elevator Co. v. Superior Court,* 169 Wash. 247, 13 P. (2d) 900.

However, it clearly appears from the above summary of the facts that the crop would have been worthless unless the funds for the harvesting and preparation of the fruit for storage and marketing had been furnished by respondent; that the agents of appellant knew, at the time they first learned of the priority of the lien of appellant, that respondent was advancing the money and furnishing the services and materials to prepare and preserve the crop for marketing under the supposition that it would have a first or prior claim.

There would have been nothing subject to the landlord's lien of appellant to pay upon the cash rental installments for that year had not respondent furnished the money to the lessees to preserve and market the crop. Even counsel for appellant state in their brief that the agents of appellant realized that their sole hope for the collection of this cash rental was out of the proceeds of the sale of this fruit; and, further, that the only thing they could do was to submit to turning over the fruit crop to respondent for preparation for marketing. One further fact should be mentioned, which is, that the undisputed evidence shows that respondent in its operations in handling this fruit crop advanced a total of $2,728.44. At the time of the trial, according to the prevailing market price of the fruit, it lacked over three hundred dollars of being sufficient to pay the money advanced and expenses incurred by respondent.

The agreement between the lessees and respondent was made known to the agents of appellant, who remained silent until the entire crop had been prepared for marketing and the foregoing sum expended.

It is true, as appellant contends, that usually mere silence or acquiesence will not operate to work an estoppel where constructive notice of records should obtain *(Peterson v. Bergman Cabinet Mfg. Co.,* 145 Wash. 664, 261 Pac. 381, 55 A. L. R. 989; *McFadden v. Allen-Nelson Mill Co.,* 150 Wash. 249, 272 Pac. 714), but, like all other general principles, they are subject to exceptions. "Circumstances alter cases;" and this is a case unto itself.

"The term 'acquiescence' is sometimes used improperly. It differs from confirmation on the one side, and from mere delay on the other. While confirmation implies a deliberate act, intended to renew and ratify a transaction known to be voidable, acquiescence is some act, not deliberately intended to ratify a former transaction known to be voidable, but recognizing the transaction as existing, and intended, in some extent at least, to carry it into effect, and to obtain or claim the benefits resulting from it. . . . As acquiescence is thus a recognition of and consent to the contract or other transaction as existing, the requisites to its being effective as a bar are, knowledge or notice. of the transaction itself, knowledge of the party's own rights, absence of all undue influence or restraint, and consequent freedom of action; . . . When a party with full knowledge, or at least with sufficient notice or means of knowledge, of his rights, and of all the material facts, freely does what amounts to a recognition of the transaction as existing, or acts in a manner inconsistent with its repudiation, or lies by for a considerable time and knowingly permits the other party to deal with the subject-matter under the belief that the transaction has been recognized, or freely abstains for a considerable length of time from impeaching it, so that the. other party is thereby reasonably induced to suppose that it is recognized, there is acquiescence, and the

transaction, although originally impeachable, becomes unimpeachable in equity.'' 2 Pomeroy's Equity Jurisprudence, § 965.

Further, in a note, p. 2092:

''Acquiescence is conduct recognizing the existence of a transaction, and intended, in some extent at least, to carry the transaction, or permit it to be carried, into effect.''

10 R. C. L. 694, § 22, states:

''The doctrine of equitable estoppel is frequently applied to transactions in which it is found that it would be unconscionable to permit a person to maintain a position inconsistent with one in which he has acquiesced or of which he has accepted any benefit. In order to raise an estoppel by acquiescence the party estopped must have been aware of his own rights and have perceived that the other party was acting on a mistaken notion of his rights.''

To the same effect is 21 C. J. 1216. See, also, *Bank of Denton v. Jesch,* 99 Kan. 797, 163 Pac. 150, and *Stark v. Meriweather,* 99 Kan. 650, 163 Pac. 152.

An exhaustive discussion of the principle of estoppel by acquiescence and silence, and review of the authorities thereon is contained in *Sumner v. Seaton,* 47 N. J. Eq. 103, 19 Atl. 884, a decision by the court of chancery of New Jersey. A further discussion of the same question is found in *Swedesboro Loan & Building Assn. v Gans,* 65 N. J. Eq. 132, 55 Atl. 82, by the same court.

The principle to which the courts in those cases and the cases cited therein have adhered is based upon the equitable maxim that

''Where a man has been silent when in conscience he should have spoken, he shall be debarred from speaking when conscience requires him to be silent.''

Other cases relied upon by appellant, *Allen v. Spokane,* 108 Wash. 407, 184 Pac. 312, and *Turner v. Spo-*

*kane County,* 150 Wash. 524, 273 Pac. 959, devolved upon widely different facts and questions of law than in the instant case.

Appellant is assuredly in no worse condition by losing his lien against the fruit crop by estoppel than he would have been had the fruit crop not been saved. Respondent is in much worse condition, and it would certainly shock the conscience of a chancellor to permit appellant to enforce his landlord's lien under such circumstances as are here shown.

The judgment of the trial court was right, and is affirmed.

BEALS, C. J., MILLARD, and MITCHELL, JJ., concur.