[No. 31965.    Department One.    May 8, 1952.]

ZORA A. WALDRIP, *Respondent*, v. OLYMPIA OYSTER COMPANY et al., *Appellants.*[1]

[1]Reported in 244 P. (2d) 273.

470

*Franklin K. Fogg* and *O'Leary, Meyer & O'Leary*, for appellants.

*Leo Teats* and *Ralph Teats*, for respondent.

DONWORTH, J.—Plaintiff brought this action to recover treble damages for the wrongful removal of timber from certain land in Mason county. The defendants are Olympia Oyster Company and the members of a partnership with which it entered into a contract to log the property involved.

Defendants answered admitting the cutting and removal of the timber and setting forth as affirmative defenses and cross-complaint certain facts relating to the property which are hereinafter stated in some detail. On the basis of these allegations the defendants claimed title by adverse possession, by mutual mistake or lost deed and further claimed that plaintiff was estopped to assert her title to the property and was guilty of laches in making such assertion. Defendants prayed for a dismissal of plaintiff's suit and that title be quieted in the Olympia Oyster Company as against plaintiff's claim of title.

Plaintiff's reply admitted that defendant Olympia Oyster Company had paid the taxes on the property for forty years and denied the other material allegations of the affirmative defenses and cross-complaint.

At the trial there was very little dispute between the parties as to the facts. After both parties had rested, the case was taken under advisement by the court. Later, a written decision was filed in which the court allowed plaintiff the value of the timber removed, denied treble damages,

and held that plaintiff's title was superior to any claim of Olympia Oyster Company asserted in the cross-complaint.

Findings of fact, conclusions of law and judgment were entered accordingly. The judgment awarded damages to plaintiff in the sum of $2775.50, dismissed defendants' cross-complaint with prejudice and decreed that plaintiff was the legal owner of the property free of any claim of Olympia Oyster Company. Defendants have appealed from this judgment.

Since the only issue presented on this appeal concerns the title to the property involved and is confined to the respective claims of Olympia Oyster Company and Mrs. Waldrip, the former will be referred to as appellant and the latter as respondent.

The history of the property and the relations of the parties with respect to it during the past fifty years is rather involved, although there is little, if any, dispute as to the basic facts of the case. It seems necessary to set out chronologically and somewhat in detail this historical background.

August 13, 1890, respondent and J. Y. Waldrip intermarried. They continued to reside in Mason county as husband and wife until his death in 1929.

June 9, 1902, Tacoma Mill Company conveyed the property by deed of bargain and sale to J. Y. Waldrip.

October 15, 1906, Olympia Oyster Company was incorporated by Waldrip, Kneeland and Hanson who were its original board of directors. Each incorporator subscribed for stock in the corporation and paid for it by conveying certain real estate not identified in the record. All of the incorporators died many years prior to the institution of this action.

From 1907 until his death August 24, 1929, J. Y. Waldrip was a director of the company. From 1908 until March 5, 1929, he was vice-president thereof and during the remaining six months of his life was its president.

During the three years following his death, respondent was president of the company. For approximately seventeen years following his father's death, J. S. Waldrip, son

of respondent and J. Y. Waldrip, was a director of the company and held some official position with it.

Appellant's principal claim to the property is based upon its payment of taxes for approximately forty years. The records of the county treaturer's office prior to 1910 are not available. In 1910, the property was assessed to J. Y. Waldrip, but the company paid the taxes. From 1911 to 1949, inclusive, the property was assessed to the company and the taxes were paid by it.

The property which is the subject of this action is twenty-one acres of logged-off land on which in 1949 there was a second growth of timber. It is wild, unimproved land with no roads, fences or other signs of occupancy. There is no evidence of any actual possession by either party.

On October 1, 1948, the original Olympia Oyster Company conveyed this property to appellant. We regard this transfer as having no bearing upon our present problem because appellant acquired the same rights, if any, with respect to the property which the original company had on that date. For all practical purposes on this appeal appellant and the original Olympia Oyster Company are one and the same and we, therefore, do not distinguish between them in this opinion.

When Mr. Waldrip died in 1929, he left a will in which respondent was designated as residuary legatee and executrix. She acted in this official capacity but did not list this property as an asset of the estate because she had no knowledge of the title having been conveyed to Mr. Waldrip in 1902. Consequently, the decree of distribution did not specifically describe the property.

On January 27, 1949, appellant obtained a preliminary title report which disclosed that the record title was in J. Y. Waldrip. This was the first knowledge it had regarding the state of the record title.

In February, 1949, appellant entered into a contract with the members of the partnership above referred to for the cutting and removal of the timber on the property. The

performance of this contract was completed on March 10, 1949.

Respondent first learned of her deceased husband's record title to the property in March, 1949, when appellant requested her to execute a quitclaim deed to it. This she declined to do. She paid the 1950 taxes on the property in the amount of $37.13 and in March, 1950, commenced this action to recover damages for the removal of the timber.

Appellant has listed six assignments of error in its brief and states that "there is but a single question to be resolved: In whom, Zora A. Waldrip or the Olympia Oyster Company, does the title to the disputed property lie?"

Appellant's claim that it is in fact the owner of the property rests upon four grounds presented in its cross-complaint:

"1. Mutual mistake or unrecorded and lost deed.
"2. Adverse possession.
"3. Title by estoppel.
"4. Laches."

We shall consider these contentions in the order stated above.

We cannot agree with appellant's first contention, that it must be inferred from the admitted facts that respondent and her deceased husband failed to convey the property to appellant because of a mutual mistake, or in the alternative, that such deed was executed but not recorded and has become lost. Appellant asks us to speculate. It is just as consistent with the admitted facts to infer that no mutual mistake existed between the parties, or to infer that no deed was ever executed, as it is to infer what appellant suggests.

The trial court found that appellant had failed to prove any of the allegations of the cross-complaint except the payment of taxes. The fact that appellant paid the taxes for forty years is not sufficient to support the inference suggested by it. It is only a matter of speculation as to why it did so. Appellant may have thought it owned the property or it may have had a lease in which it agreed to pay the

taxes. In any event, payment of the taxes alone cannot support an inference that there ever was a deed or any agreement to execute one.

Next, appellant contends that it had acquired title by adverse possession under the provisions of Rem. Rev. Stat., § 156 [P.P.C. § 73-3], which reads as follows:

"The period prescribed in the preceding section for the commencement of actions shall be as follows:
"Within ten years, —
"1. Actions for the recovery of real property, or for the recovery of the possession thereof; and no action shall be maintained for such recovery unless it appear that the plaintiff, his ancestor, predecessor, or grantor, was seised or possessed of the premises in question within ten years before the commencement of the action." *cf.* RCW 4.16.020.

In accordance with this statute, appellant claims that its possession of the land involved was open, actual, notorious, hostile, continuous and exclusive since 1910. It contends that it did everything necessary to assert its ownership that is ordinarily done in Mason county with regard to the possession of logged-off land. However, except for paying taxes, appellant did nothing toward taking actual possession of the land. If the record owner had visited the land during the forty-year period when appellant was paying the taxes, there would have been no sign or visible indication that appellant or any one else was in possession or was asserting any claim in opposition to the title of the record owner.

To acquire title to land under § 156, *supra*, there must be a much stronger showing of adverse possession than appears from the evidence in this case. *State v. Stockdale,* 34 Wn. (2d) 857, 210 P. (2d) 686. Appellant's claim of title by adverse possession is without merit.

We now consider appellant's claim of title by reason of estoppel because of the acts of respondent and her deceased husband. It is asserted that respondent is now estopped to claim title because, during the period from 1910 to 1929 (when J. Y. Waldrip died), her husband acquiesced

in appellant's treating the property as its own and permitted it to pay the taxes thereon.

If J. Y. Waldrip were still living and were the plaintiff in this action, presumably additional evidence would be available to the court concerning the reason for appellant's beginning to pay the taxes in 1910. He doubtless knew that he and his wife owned the land, the title to which had stood in his name since 1902, and that appellant, of which he was an officer and director, had paid the taxes since 1910 with his knowledge and, at least, tacit approval. Whether his testimony, if now available, would have estopped him or could have estopped the community from claiming title to the property is a matter upon which it is idle to speculate at the present time.

Certainly respondent is not estopped in this action merely because appellant paid the taxes on the property from 1910 to 1929 during her husband's lifetime, where the reason for appellant's so doing is entirely unknown. Respondent had no knowledge that she and her deceased husband held record title to the property until March, 1949.

Neither is she chargeable with knowledge of the fact that appellant was paying taxes on this land except during the three years that she was president of appellant (1929-1932) after her husband's death. By that time appellant had been paying the taxes annually for nineteen years and the land was assessed to appellant. Not knowing at that time that the title stood in her deceased husband's name, she cannot be held to be estopped to assert her title merely because appellant continued to pay the taxes while she was its president (1929-1932).

In support of its argument that title to real property may be acquired by estoppel, appellant cites *Code v. London*, 27 Wn. (2d) 279, 178 P. (2d) 293; *Carrothers v. Whitney*, 56 Wash. 327, 105 Pac. 831; *Dickerson v. Colgrove*, 100 U. S. 578, 25 L. Ed. 618.

These cases all properly apply to certain claims to the title to real property the general equitable principle of estoppel: to wit, that one, who by his wrongful or negligent act in-

duces another to do that which he otherwise would not have done, cannot be permitted to plead the falsity of his act. Here, however, respondent performed no act which can be held to have caused appellant to deal with the property as its own.

It is true that one may be estopped to assert his rights if he stands by silently when he has a duty to speak. *De Boe v. Prentice Packing & Storage Co.*, 172 Wash. 514, 20 P. (2d) 1107. But in the *De Boe* case we also recognized the general rule that usually mere silence or acquiescence will not operate to work an estoppel where the other party has constructive notice of public records which disclose the true facts. *Elmonte Inv. Co. v. Schafer Bros. Logging Co.*, 192 Wash. 1, 72 P. (2d) 311; *Kosten v. Fleming*, 15 Wn. (2d) 523, 131 P. (2d) 170. The burden was upon appellant to show that respondent knew or should have known that appellant would rely and act upon her silence. *Codd v. Westchester Fire Ins. Co.*, 14 Wn. (2d) 600, 128 P. (2d) 968, 151 A. L. R. 316.

If there were at any time a duty upon respondent to speak, it could conceivably have been only during the three-year period when she served as president of appellant corporation. The fact is, however, that she then had no knowledge that she owned the land or that record title stood in the name of her deceased husband. Should we assume, as appellant argues we should do, that she was chargeable with knowledge of the state of the record title, appellant also was so chargeable. Where the parties have equal means of knowledge there can be no estoppel in favor of either. *Bellingham Securities Syndicate v. Bellingham Coal Mines*, 13 Wn. (2d) 370, 125 P. (2d) 668; *Geoghegan v. Dever*, 30 Wn. (2d) 877, 194 P. (2d) 397.

Respondent was not chargeable with knowledge that the original Olympia Oyster Company purported to convey the land to appellant in 1948. The recording of an instrument is constructive notice only to those acquiring interests subsequent to the execution of the instrument. *Ackerson v. Elliott*, 97 Wash. 31, 165 Pac. 899. It does not affect the

rights of prior record parties. *Ryan v. Plath*, 18 Wn. (2d) 839, 140 P. (2d) 968.

■ Until the conveyance in November, 1948, from the original Olympia Oyster Company to appellant there had been nothing done by appellant, or its predecessor, to indicate that it claimed any right, title or interest in or to the property. In our opinion, mere payment of taxes by appellant was not sufficient to charge the record owner of the property with notice that appellant claimed title thereto. Appellant's contention that respondent is estopped to assert her title is therefore without merit.

■ Lastly, appellant says that respondent was guilty of laches and, therefore, should be denied recovery. To constitute laches there must not only be a delay in the assertion of a claim but also some change of condition must have occurred which would make it inequitable to enforce it. *Stewart v. Johnston*, 30 Wn. (2d) 925, 195 P. (2d) 119.

As we pointed out in discussion of estoppel, respondent's failure to ascertain until 1949 that she was the owner of the land did not cause appellant to change its position.

Our cases which appellant cites in support of its argument all correctly apply the general rule to the particular facts of each case. This is true of *Chezum v. McBride,* 21 Wash. 558, 58 Pac. 1067; *Ferrell v. Lord,* 43 Wash. 667, 86 Pac. 1060; *Kline v. Galland,* 53 Wash. 504, 102 Pac. 440; *Little Bill v. Swanson,* 64 Wash. 650, 117 Pac. 481; *Teeter v. Brown,* 130 Wash. 506, 228 Pac. 291; *Meyer v. Trantum,* 135 Wash. 449, 237 Pac. 1006, and *Edison Oyster Co. v. Pioneer Oyster Co.,* 22 Wn. (2d) 616, 157 P. (2d) 302. In each of these cases the party claiming laches had performed some act in reliance upon nonaction by the other party or there had been long delay on the part of the latter in the assertion of his claim. .

■ Something more than the payment of taxes must be shown as the basis for applying the doctrine of laches. We cannot find that appellant here did anything else to change its position. As the trial court aptly stated in its memorandum decision:

"Also, it was the defendant corporation, or its predecessor who was claiming title to a tract of realty to which it did not have title. It was the party upon whom there was a legal duty to take action, if action were to be taken. Plaintiff was not being injured by the payment of taxes by the defendant corporation, or its predecessor and there was no action which plaintiff could bring, but defendant corporation and its predecessor were claiming title and should have taken steps to assert that claim before all of the parties who had actual knowledge of the matter had died. If anyone in this case is guilty of laches and should thereby be estopped from asserting title to the real property in controversy, it is the defendant corporation."

To summarize, appellant has failed to prove any duty resting upon respondent to perform any act in regard to this property. The means of knowledge as to the record title were open equally to both parties. Respondent was under no duty to appellant to investigate the public records and advise it concerning this matter.

Appellant voluntarily chose to pay the taxes for forty years without searching the public records to ascertain the condition of the record title. Respondent did nothing to induce it to refrain from searching the public records.

Respondent may not be deprived of her title nor may appellant acquire title to the property under the circumstances proved here.

It follows that, since appellant removed timber from land belonging to respondent, appellant is liable to her for the value thereof. Since no dispute exists concerning the amount awarded respondent, the judgment of the trial court is, in all respects, affirmed.

SCHWELLENBACH, C. J., MALLERY, GRADY, and WEAVER, JJ., concur.