IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR AMERIQUEST MORTGAGE SECURITIES INC., ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2004-R5, | No. 82622-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |
| Respondent, | |
| v. | |
| BILLIE J. HARRIS; CURTIS R. HARRIS, | |
| Appellants, | |
| AMERICAN SURETY COMPANY; AUBURN PARK COMMUNITY LLC; PAUL'S ELECTRIC NW, INC.; AND PERSONS OR PARTIES UNKNOWN CLAIMINING ANY RIGHT, TITLE, LIEN, OR INTEREST IN THE PROPERTY DESCRIBED IN THE COMPLAINT HEREIN, | |
| Defendants. | |

ANDRUS, C.J. — Billie and Curtis Harris challenge the trial court's order granting summary judgment in favor of Deutsche Bank National Trust Company and the court's entry of a judgment and decree of foreclosure. The Harrises contend that they raised genuine issues of material fact as to their laches and statute of limitations

Citations and pin cites are based on the Westlaw online version of the cited material.

defenses to Deutsche Bank's foreclosure action.  We disagree and affirm.

FACTS

In April 2004, the Harrises executed an adjustable rate note (Note) agreeing to pay $207,000.00, plus interest, to Ameriquest Mortgage Company.  Clerk's Papers The Note called for monthly installment payments of principal and interest on the first day of each month, beginning June 1, 2004, and had a maturity date of May 1, 2034.  The Harrises' payment obligations under the Note were secured by a deed of trust (DOT) on their home in Auburn, Washington.

It is undisputed that the Harrises stopped making payments under the Note on or about June 1, 2005.  In January 2006, Ameriquest sent the Harrises a notice of trustee's sale setting a sale date of May 5, 2006.  Also in January 2006, the Harrises filed a Chapter 13 bankruptcy petition.  The resulting bankruptcy proceeding (first bankruptcy) was dismissed on December 21, 2007.

Less than a month later, on January 10, 2008, the Harrises filed a second Chapter 13 bankruptcy petition.  The bankruptcy court confirmed a Chapter 13 plan in that proceeding (second bankruptcy) on May 5, 2009.

In November 2011, the Harrises requested a loan modification, representing that they were "having difficulty making [their] monthly payment because . . . [their] household income has been reduced."

On July 26, 2012, the bankruptcy court granted the Harrises a discharge in the second bankruptcy.

In November 2012, the Harrises' request for a loan modification was rejected.  Meanwhile, Ameriquest assigned its interest under the DOT to Deutsche Bank.

- 2 -

On August 7, 2015, Deutsche Bank initiated this lawsuit by filing a foreclosure complaint against the Harrises.[1] Deutsche Bank then moved for summary judgment as to its right to foreclose under the DOT. In opposition, the Harrises argued that (1) Deutsche Bank had not established its status as holder of the Note, (2) laches barred Deutsche Bank's suit because it unreasonably delayed in filing it, and (3) the statute of limitations barred enforcement of at least some installment payments and, thus, there remained a genuine issue of material fact as to the amount owed.

In April 2016, the trial court granted Deutsche Bank's motion for summary judgment "w[ith] respect to [its] status as holder" of the Note. However, the trial court "reserve[d] the amount of damages for further ruling of the court."

In January 2021, Deutsche Bank filed another motion for summary judgment. Relying on RCW 4.16.280,[2] Deutsche Bank argued that the limitation period restarted in November 2011, when the Harrises acknowledged the underlying debt by requesting a loan modification. The Harrises disputed the claim that a loan modification request is an acknowledgment under the statute. The Harrises also asserted that Deutsche Bank was relieved from the automatic bankruptcy stay as of May 5, 2009, the date the Harrises' Chapter 13 plan was confirmed. Applying a six-year limitation period for each installment, the Harrises asserted based on their calculations that Deutsche Bank could not enforce any installment or loan charge

---

[1] Deutsche Bank named additional parties in its complaint, but its claims against those other parties are not at issue in this appeal.

[2] RCW 4.16.280 provides, in relevant part, "No acknowledgment or promise shall be sufficient evidence of a new or continuing contract whereby to take the case out of the operation of [Chapter 4.16 RCW, Limitation of Actions], unless it is contained in some writing signed by the party to be charged thereby; except, an acknowledgment or promise made after the limitation period has expired shall not restart, revive, or extend the limitation period."

that came due before May 1, 2006. The Harrises also argued that "[t]he doctrine of laches should be applied either to (1) bar the collection of this claim in its entirety, or (2) bar a portion of this claim."

In April 2021, the trial court granted Deutsche Bank's motion for summary judgment and entered a judgment and a decree of foreclosure in Deutsche Bank's favor. The Harrises appeal.

## ANALYSIS

The Harrises contend that because genuine issues of material fact remain as to their laches and statute of limitations defenses, the trial court erred in granting summary judgment. We disagree.

## Standard of Review

We review a trial court's grant of summary judgment de novo, engaging in the same inquiry as the trial court. Larson v. Snohomish County, 20 Wn. App. 2d 243, 273, 499 P.3d 957 (2021). "A moving party is entitled to summary judgment 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact.' " Id. at 274 (quoting CR 56(c)). "We view all facts and reasonable inferences in the light most favorable to the non-moving party." Id. "We may affirm on any basis supported by the record whether or not the argument was made below." Bavand v. OneWest Bank, 196 Wn. App. 813, 825, 385 P.3d 233 (2016).

## Statute of Limitations

The Harrises argue that summary judgment was improper because they raised a genuine issue of material fact as to whether Deutsche Bank is barred by the

statute of limitations from enforcing certain installments under the Note. We disagree.

The six-year limitation period for actions "upon a contract in writing" applies to this action. RCW 4.16.040(1). Where, as here, recovery is sought on an obligation payable by installments, "the statutory limitation period commence[s] for each installment from the time it became due and was not paid." Merceri v. Bank of N.Y. Mellon, 4 Wn. App. 2d 755, 760, 434 P.3d 84 (2018). However, under RCW 4.16.230, the limitation period is tolled during a bankruptcy stay. Merceri v. Deutsche Bank AG, 2 Wn. App. 2d 143, 151, 408 P.3d 1140 (2018).

The earliest installment payment Deutsche Bank sought to enforce in this action became due (and was not paid) on June 1, 2005. The Harrises argue, as they did below, that taking into account (1) the periods during which the limitation period was tolled because of the first and second bankruptcy stays and (2) the August 7, 2015 filing date for this action, Deutsche Bank is barred from enforcing any installment payment or loan charge that became due before May 1, 2006. The Harrises premise this argument on an assertion that "[t]he automatic stay with respect to the second [bankruptcy] expired on May 5, 2009 pursuant to the confirmation order that provided for confirmation of the Chapter 13 Plan that provided that the automatic stay would apply[3] immediately."

But the order confirming the Harrises' Chapter 13 plan is not in the record, and neither is the confirmed plan.[4] Also, although the Harrises cite page 174 of the

---

[3] Presumably, the Harrises intended "expire" here instead of "apply."

[4] The appellant has the burden of providing an adequate record on appeal. Story v. Shelter Bay Co., 52 Wn. App. 334, 345, 760 P.2d 368 (1988). Although the record contains a document

clerk's papers for a purported excerpt from the confirmed plan that the Harrises claim supports their argument that the stay expired upon plan confirmation, the quoted language is not in the record.[5] In any case, the excerpt provides only that relief from stay "shall be granted" under certain circumstances, and the Harrises point to nothing in the record showing that relief from stay was granted. In short, the record does not support the Harrises' claim that the automatic stay expired on May 5, 2009 pursuant to the confirmation order.[6]

Furthermore, the Harrises rely on a provision in the Bankruptcy Code stating that the automatic stay "continues until the earliest of . . . (A) the time the case is closed; (B) the time the case is dismissed; or (C) if the case is . . . a [Chapter 13] case . . . , the time a discharge is granted or denied." 11 U.S.C. § 362(c)(2). Here, the earliest of these dates is July 26, 2012, the date the bankruptcy court granted the Harrises a discharge in the second bankruptcy. Based on a July 26, 2012 expiration for the second bankruptcy stay, this action was timely with respect to all installment payments dating back to the one that became due on June 1, 2005.[7] The Harrises point to no evidence in the record, and they provide no meaningful analysis, to

---

dated February 5, 2008 and captioned "Chapter 13 Plan," that document is not the plan that was ultimately confirmed in May 2009. Rather, the record reflects that the February 5, 2008 document was a proposed plan that was twice amended prior to confirmation.

[5] The Harrises relied on the same excerpt below, citing to an "Anderson Declaration." But no such declaration appears in the record.

[6] To the extent the Harrises argue that confirmation of the plan lifted the bankruptcy stay by operation of law, that argument is not adequately briefed to warrant consideration. Cf. Norcon Builders, LLC v. GMP Homes VG, LLC, 161 Wn. App. 474, 486, 254 P.3d 835 (2011) ("We will not consider an inadequately briefed argument.").

[7] The first bankruptcy stay tolled the limitation period from January 5, 2006 until December 21, 2007 (715 days), and the second bankruptcy stay tolled the limitation period from January 10, 2008 until July 26, 2012 (1,659 days), for a total tolling period of 2,374 days. Deutsche Bank initiated this lawsuit well within six years plus 2,374 days of June 1, 2005. (Six years plus 2,374 days from June 1, 2005, is November 30, 2017. Deutsche Bank initiated this lawsuit in August 2015.)

persuade us otherwise.

The Harrises fail to raise a genuine issue of material fact as to whether the statute of limitations bars Deutsche Bank's enforcement of any of the installments at issue in this action. So, they also fail to establish the trial court erred by rejecting the Harrises' statute of limitations defense as a matter of law.[8]

Laches

The Harrises next argue that summary judgment was improper because they raised a genuine issue of material fact as to whether the doctrine of laches bars Deutsche Bank's enforcement of some or all of the installments under the Note. We disagree with this argument as well.

"Laches is an equitable defense that is based on estoppel." Newport Yacht Basin Ass'n of Condo. Owners v. Supreme Nw., Inc., 168 Wn. App. 56, 76, 277 P.3d 18 (2012). "The doctrine applies when the defendant affirmatively establishes '(1) knowledge by plaintiff of facts constituting a cause of action or a reasonable opportunity to discover such facts; (2) unreasonable delay by plaintiff in commencing an action; and (3) damage to defendant resulting from delay in bringing the action.' "

---

[8] For this reason, we need not address Deutsche Bank's argument that the Harrises' November 2011 modification request restarted the limitation period under RCW 4.16.280. We observe, however, that neither of the federal cases on which Deutsche Bank relies addressed whether a modification request acknowledging that a debt exists is enough to restart the limitation period not only as to a foreclosure action, but also as to enforcement of individual, otherwise time barred installment payments. See Thacker v. Bank of N.Y. Mellon, No. 18-5562 RJB, 2019 WL 1163841, at *6 (Bankr. W.D. Wash. March 13, 2019) (holding that limitation period had not run on creditor's foreclosure action because loan modification request constituted acknowledgment of "the existence of the debt"); Wean v. US Bank Nat'l Ass'n, No. C19-1630 MJP, 2019 WL 6498115, at *4 (W.D. Wash. Dec. 3, 2019) (holding that loan modification requests restarted limitation period for creditor's foreclosure action); cf. Eng v. Specialized Loan Servicing, ___ Wn App. 2d ___, 500 P.3d 171, 179 (2021) (creditor may, through foreclosure, "enforce . . . actionable past due installments but not . . . time-barred past due installments").

Id. at 77 (quoting Davidson v. State, 116 Wn. 2d 13, 25, 802 P.2d 1374 (1991)). " 'To constitute laches there must not only be a delay in the assertion of a claim but also some change of condition must have occurred which would make it inequitable to enforce it.' " Id. (quoting Waldrip v. Olympia Oyster Co., 40 Wn.2d 469, 477, 244 P.2d 273 (1952)).

The Harrises argue that Deutsche Bank unreasonably delayed because "Deutsche Bank was specifically dealt with in the Harris Chapter 13 Plan and given relief from stay to pursue any of its remedies on May 9 [sic], 2009," but it did not file this action until August 2015, more than six years later. But because the record does not support the Harrises' assertion that Deutsche Bank was given relief from stay in May 2009, the Harrises fail to raise a genuine issue of material fact as to whether the six-year limitation period has expired as to any installment payment. Therefore, absent highly unusual circumstances, laches does not apply. Brost v. L.A.N.D., Inc., 37 Wn. App. 372, 375, 680 P.2d 453 (1984) ("A court is generally precluded, absent highly unusual circumstances, from imposing a shorter period under the doctrine of laches than that of the relevant statute of limitations.").

The Harrises analogize this case to In re Dalziell, where the bankruptcy court found that highly unusual circumstances justified applying laches to bar a lender's claim even as to installment payments that were not statutorily time barred. 608 B.R. 245, 249, 252 (Bankr. E.D. Wash. 2019). But in addition to being nonbinding, Dalziell is readily distinguishable. In Dalziell, the lender held two notes secured by separate DOTs on the debtor's home. Id. at 247. After a default under the first note, the lender issued a notice of trustee's sale. Id. at 248. The unpaid balance identified in the

notice was in an amount "significantly in excess of the face amount of the first note." Id. So, it was unclear whether the foreclosure included the obligations set forth in just the first note, or in both notes. Id.

The trustee's sale took place, and the debtor's home was sold. Id. As a result, the debtor no longer owned the home and made no more payments to the lender. Id. Additionally, the foreclosure extinguished the creditor's second deed of trust by operation of law. Id. This, in turn, constituted an event of default under the second note. Id. Yet instead of demanding payment of the now unsecured obligation under the second note, the lender " 'charged off' " the balance owed on that note. Id.

More than ten years later, the lender demanded payment on the second note. Id. The debtor then filed a Chapter 13 bankruptcy petition and argued that the lender's claim should be denied, including with respect to installment payments that were not statutorily time barred. Id. at 248-49. The bankruptcy court agreed, observing that the equities are different in cases in which a lender is seeking to foreclose on its collateral than when the lender had "already foreclosed on its collateral, and now, eleven years after the foreclosure, demands more." Id. at 250. The court held that the equities, together with the following "highly unusual circumstances," compelled it to apply laches to bar the lender's claim:

> In August, 2008, [the lender] charged off the Second Note and had no contact with the debtor[ ] about the Second Note until March 2019. [The lender] has not provided any explanation for its failure to timely act on the Second Note. It was unreasonable for [it] to wait more than ten years after the foreclosure of the first deed of trust against [the debtor's] home before making a demand on the Second Note. Moreover, this failure . . . to timely act was more egregious than the lenders' respective delays in [other cases]. In those . . . cases, the default was a result of some missed installments, but here the default

> included the forfeiture of the lender's collateral, a default that could not be cured. Finally, the unreasonableness of the delay was compounded by the fact that, without any explanation, the notice of trustee's sale listed a balance due that was significantly greater than the face amount of the first note and it was reasonable for [the debtor] to believe that the balances due on the first and second notes were included in the foreclosure.

Id. at 251-52.

Here, unlike in Dalziell, Deutsche Bank is seeking to enforce on its collateral, not "demand[ing] more" long after foreclosure. See id. at 250. And none of the unusual circumstances present in Dalziell are present here. The Harrises' reliance on Dalziell is misplaced.

Finally, and independently fatal to their laches defense, the Harrises cannot establish that they were damaged by any delay in Deutsche Bank's filing this foreclosure action. To the contrary, the Harrises benefited from the delay, as they have lived in their home since 2005 without making the installment payments required under the Note. The Harrises argue they were damaged because they continued to maintain their home and pay property taxes and insurance so long as Deutsche Bank delayed in foreclosing. But these expenditures were not prejudicial because they were incidental to the continued home ownership that has availed the Harrises since 2005. The trial court did not err by rejecting the Harrises' laches defense as a matter of law.

## Fees on Appeal

Deutsche Bank requests fees on appeal, relying on the attorney fees provisions in the Note and the DOT. The Harrises do not dispute that Deutsche Bank is entitled to an award of fees under these provisions should it prevail on appeal. Cf.

- 10 -

No. 82622-1-I/11

<u>Umpqua Bank v. Shasta Apartments, LLC</u>, 194 Wn. App. 685, 699-700, 378 P.3d 585 (2016) (fees may be awarded based on contract, and contractual provision for award of attorney fees at trial supports award of fees on appeal). We award Deutsche Bank fees on appeal, subject to its compliance with RAP 18.1.

We affirm.

_Andrus, C.J._

WE CONCUR:

_Mann, J._          _Dwyer, J._